# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **LOGAN GRAPHIC PRODUCTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 02 C 1823** |
| | ) | |
| **v.** | ) | |
| | ) | **JUDGE PLUNKETT** |
| **TEXTUS USA, INC.,** (d/b/a TEXTUS | ) | |
| INDUSTRIES, INC. and TEXTUS ART AND | ) | Magistrate Judge Mason |
| CRAFT) and **DAVID SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DOCKETED**
**SEP 16 2002**

**FILED**
SEP 1 6 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING

TO:     See Attached Certificate of Service

PLEASE TAKE NOTICE that on September 13, 2002, we filed with the Clerk of the United

States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn

Street, Chicago, Illinois 60604, the Memorandum in Support of Motion for Preliminary Injunction,

a copy of which is hereby served upon you.

Dated: September 13, 2002        By: _David Roseth_ (signature)
                                    _____
                                    One of the Attorneys for Plaintiff
                                    Logan Graphic Products, Inc.

Kristin J. Achterhof (No. 06206476)
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
Phone:   (312) 902-5200
Fax:     (312) 902-1061



## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Logan's Distinctive Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Defendants' Efforts To Copy Logan's Trade Dress . . . . . . . . . . . . . . . . . . . 4

    III.    Logan's Complaint and Defendant's Response . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.    Preliminary Injunction Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.    Logan Is Entitled To The Injunctive Relief It Seeks . . . . . . . . . . . . . . . . . . 8

        A.    Logan Is Likely To Prevail On The Merits Of Its Claims . . . . . . . . . . . . 8

            1.    Logan is likely to prevail on its claim for trade dress
                infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                (a)    Distinctiveness of Logan's trade dress . . . . . . . . . . . . . . 10

                (b)    Likelihood of confusion . . . . . . . . . . . . . . . . . . . . . . . . 11

                (c)    Non-functionality of Logan's trade dress . . . . . . . . . . . . 14

            2.    Logan is likely to prevail on its claim for false advertising . . . . . 15

            3.    Logan is likely to succeed on its claim for unfair competition
                And deceptive trade practices . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.    Logan Has No Adequate Remedy At Law And, Accordingly, Will Suffer
            Irreparable Harm In The Absence Of Injunctive Relief . . . . . . . . . . . . 16

        C.    The Balance Of Harms Weighs Heavily In Logan's Favor . . . . . . . . . . 17

        D.    The Injunctive Relief That Logan Seeks Will Not Harm The Public's
            Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Statutes and Rules**

15 U.S.C. § 1052(f) (West 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rule of Civil Procedure 65(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Cases**

*Abbot Labs v. Mead Johnson & Co.,* 971 F.2d 6 (7th Cir. 1992) . . . . . . . . . . . . . . . . . 8, 9, 12, 15

*Brunswick Corp. v. Jones,* 784 F.2d 271 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cal City Optical Inc. v. Pearle Vision, Inc.,* No. 93 C 7577, 1994 WL 114859
(N.D. Ill Mar. 29, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

*Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F. Supp. 1114 (N.D. Ill. 1995) . . . . . . . . 10, 11

*Consumer Sales & Marketing, Inc. v. Digital Equipment Corp.,* No. 95 C 5049,
1995 WL 548765 (N.D. Ill. Sept. 13, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 94 F.3d 376 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 9

*Forum Corp. of N. Am. v. Forum Ltd.,* 903 F.2d 434 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . 12

*Gorgonz Group, Inc. v. Marmon Holdings, Inc.,* No. 00 C 2992, 2001 WL 103406,
(N.D. Ill. Jan. 30, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Intermatic Inc. v. Toeppen,* 947 F. Supp. 1227 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . 12, 16

*Labor Ready, Inc. v. Williams Staffing, LLC,* 149 F. Supp. 2d 398 (N.D. Ill. 2001) . . . . . . . . . 16

*Pride Communications Ltd. v. WCKG, Inc.,* 851 F. Supp. 895 (N.D. Ill. 1994) . . . . . . . . . . 8, 17

*Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852 (7th Cir. 1982) . . . . . . . 16

*Reed-Union Corp. v. Turtle Wax, Inc.,* 869 F. Supp. 1304 (N.D. Ill. 1994) . . . . . . . . . 10, 12, 14

*Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380 (7th Cir. 1984) . . . . . . . . . . . . . . 8

*Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277 (7th Cir. 1998) . . . . . . . . . . . . . . . . 9, 12

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . 13

**Other**

Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition,* at 8-8 (3d ed..1994) . 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED

SEP 1 6 2002

LOGAN GRAPHIC PRODUCTS, INC.,                    )
                                                                        )
                            Plaintiff,                    )          **Case No. 02 C 1823**
                                                                        )
        v.                                                          )
                                                                        )    JUDGE PLUNKETT
TEXTUS USA, INC. (*d/b/a* Textus Industries,   )
Inc. *and* Textus Art & Craft) and                )
DAVID SMITH,                                              )
                                                                        )    **Magistrate Judge Mason**
                            Defendants.               )

FILED

SEP 1 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Logan Graphic Products ("Logan" or "Plaintiff"), by its attorneys, states as follows

in support of its Motion for Preliminary Injunction against Defendants, Textus USA, Inc. (*d/b/a*

Textus Industries, Inc., and Textus Art and Craft), and its owner and Chief Executive Officer,

David Smith[1] (together, "Textus" or "Defendants"):

## INTRODUCTION

Over the past twenty-eight years, Logan has been engaged in the manufacture, marketing

and sale of its now-famous line of mat cutting tools and accessories, and has invested substantial

sums in advertising, promoting, marketing and offering its distinctive line of products for sale

throughout the United States and around the world. With the intent to trade upon the widespread

recognition and goodwill associated with Logan's unique trade dress, Defendants recently entered

---

[1]Textus has admitted paragraph 3 of its Answer filed in this case that "David Smith is the owner and
CEO of Textus Industries, Inc. and that he, in furtherance and execution of his duties appurtenant
to that position, authorized certain business activities which Plaintiff may challenge in this lawsuit."



the mat cutting market by promoting and offering for sale mat cutting tools and accessories which incorporate the same nonfunctional design features as used by Logan's best-selling line of products. Notwithstanding Logan's requests that Textus cease and desist, and in complete disregard of the irreparable harm and actual confusion which has resulted from Defendants' unlawful activities, Defendants have continued to copy and exploit the design features associated with Logan's famous products. Accordingly, Logan now seeks a preliminary injunction order to protect the public from confusion as to the source of Defendants' products, and to preserve the widespread recognition and goodwill associated with Logan's valuable trade dress.

For the reasons set forth herein and in Logan's Motion for Preliminary Injunction, and based upon the evidentiary support set forth in the affidavits attached hereto and the live testimony to be presented in open court in support of its Motion at time of hearing,[2] Logan can establish the following: (1) that it is likely to succeed on the merits of its underlying claims against Defendants; (2) that Logan has no adequate remedy at law and, as a result, has suffered and will continue to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of harms weighs strongly in Logan's favor; and (4) injunctive relief would benefit the public interest.

---

[2] Logan currently intends to call Mr. Curt Logan (President) and Mr. Carl Alguire (Marketing Director) as live witnesses during the hearing on Logan's Motion for Preliminary Injunction. Mr. Logan and Mr. Alguire will testify in support of the facts set forth herein and any other facts relevant to the Court's consideration of the merits of Logan's Motion for Preliminary Injunction. Logan reserves the right to call additional witnesses, as appropriate.

**BACKGROUND**

I.     **Logan's Distinctive Trade Dress**

Since the time that Logan first entered the art material market almost three decades ago, it has become one of the leading manufacturers of mat cutting tools worldwide, and the Logan brand has achieved wide-spread recognition for its association with the quality products marketed and sold under the Logan mark and displaying Logan's distinctive trade dress. The Logan line of products, including, but not limited to, the best-selling "#301 Compact" mat cutting system, the "#401 Intermediate" mat cutting system, and Logan's straight-edge and bevel-edge cutting tools, are characterized by Logan's distinctive non-functional design features. Indeed, Logan's trade dress associated with these products has remained essentially unchanged for several years, and, as a result, its products have derived a unique and distinctive identity. (Logan's "#301 Compact" and "#401 Intermediate" are shown in the product sheets attached hereto as Exhibit 1.)

Logan has devoted considerable time, effort and resources to its ongoing efforts to research, develop, market and promote the Logan brand and its high-quality products. As a result, Logan has become a leader in the highly-competitive art materials market. Indeed, Logan has spent hundreds of thousands of dollars over the course of the last decade, alone, in advertising, marketing and promoting its products, which now are advertised to the public on television, as well as in print and online promotion materials. In addition, Logan has actively marketed and promoted its products utilizing an extensive sales force throughout the United States and around the world. For several years, Logan has exhibited and promoted its products at essentially every major national and international art materials trade show.

3

As a result of Logan's extensive marketing and sales efforts, the distinctive trade dress associated with its products has acquired widespread consumer and trade recognition. Furthermore, Logan's reputation for quality and excellence, and the substantial goodwill which dealers, distributors and consumers recognize and associate with Logan's trade dress, have become the company's most valuable assets.

## II.    Defendants' Efforts To Copy Logan's Trade Dress

Without Logan's authorization, approval or knowledge, and long after Logan's trade dress had achieved secondary meaning in the art materials industry, Defendants--previously unknown in the mat cutting equipment market--have embarked upon a nationwide campaign to compete with Plaintiff by promoting and attempting to sell mat cutting tools which, upon initial inspection, appear to be exact copies of Logan's popular "#301 Compact" and "#401 Intermediate", and related equipment, such as Logan's straight-edge and bevel-edge cutting tools. Specifically, Defendants have been contacting Plaintiff's dealers and distributors in an effort to market and sell Defendants' "Home Pro" and "Studio Pro" mat cutting tools, claiming that these products are "exact" copies of Logan's "#301 Compact" and "#401 Intermediate", respectively. (Defendants' "Home Pro" and "Studio Pro" are shown in the product sheets attached hereto as Exhibit 2.)

Designed to capitalize upon the widespread recognition and substantial goodwill associated with Logan's best-selling products, Defendants' mat cutting tools incorporate the essential and distinctive elements of Logan's famous trade dress. Indeed, Defendants have copied virtually every cosmetic design aspect of the "#301 Compact", the "#401 Intermediate", and related cutting tools manufactured and sold in conjunction with these mat cutting systems. For example, substantial similarities between the products include, but are not limited to, the following:

4

- Defendants' boards are the same color, size, and material (vinyl laminate) as Plaintiff's boards;

- Defendants' straight-edge and bevel-edge cutting tool uses the exact color scheme (silver and black) used by Plaintiff;

- Defendants' straight-edge cutting tool has the same overall appearance as Logan's straight-edge cutting tool, due, primarily to the fact that, among other things, Defendants' tool incorporates the same color scheme, shape and dimensions as Logan's tool, and, perhaps most notably, Defendants' use a "bike handle" grip design as part of the tool, which is a unique and arbitary design feature used only by Logan for decades;

- Defendants' bevel-edge cutting tool also utilizes identical shape and design features as those which comprise Logan's trade dress, notwithstanding the fact that Logan has, for years, offered a bevel-edge cutting tool with extrusions which have an original, distinctive shape;

- The rail and hinges on Defendants' straight edge bars are identical in color, shape and style to Plaintiff's straight edge bars, and Defendants have placed adhesive labels (which are the same color as Plaintiff's labels) on the straight edge bar in the same place that Plaintiff's appear;

- The measurement scales that appear on Defendants' tools incorporate the same color, font and style as Logan's measurement scales;

- Defendants' adjustable mat rail guide appears to be identical in every respect to Plaintiff's (*i.e.*, the same color, stickers placed in the same location, and screws which are virtually the same color and size as those used by Plaintiff); and

- While Logan's "#301 Compact" mat cutting board arbitrarily features a tension spring mat guide rather than a hinge, Logan's "#401 Intermediate" board happens to feature a hinge. At the same time, Defendants' "Home Pro"(designed to compete with Logan's "#301 Compact") features a tension spring mat guide, while Defendants' "Studio Pro" (designed to compete with Logan's "#401 Intermediate") includes a hinge.

Defendants have copied Logan's unique and non-functional design elements and incorporated them into their products in such a way as to create the same overall commercial

5

impression as Logan's trade dress.[3/]  By so closely duplicating the appearance of Logan's design and trade dress, a reasonable purchaser, after an initial inspection, could easily conclude that Defendants' products are the same as, or in some way related to, Logan's products. Indeed, as set forth in the sworn affidavits attached hereto, there have been instances of actual confusion involving individuals who, for years, have been professionally involved in the mat cutting industry. (*See* Affidavit of Brent Land, attached as Exhibit 3; Affidavit of Sam Albright, attached as Exhibit 4.)

However, the similarities between the tools do not extend to performance.  Although the tools may appear identical, the performance of Defendants' products is substantially inferior to those manufactured by Logan.  For example, the blade slots on Defendants' tools allow for hooks and curves at the corners of the mat, and the depth screws do not control proper blade depth as well as Logan's products.  Indeed, it appears that Defendants' use of inferior materials and machined parts have resulted in poor fit tolerances and substandard products which would be instantly rejected by Logan's Quality Control Department.

### III.   Logan's Complaint and Defendants' Response

Upon learning of Defendants' efforts to market and sell "knock-off" versions of Logan's best-selling tools, Logan sent a letter to Defendants' counsel, requesting that Textus cease and desist from any further infringing conduct.  (A copy of Logan's letter is attached hereto as Exhibit 5.)  However, when Defendants refused to remove the infringing features from their products, Logan initiated litigation by filing a Complaint alleging causes of action under the Lanham Act

---

[3/]Importantly, in paragraph 10 of their Answer, Defendants admit that Textus has included the "same" or "similar" features on its products as those which comprise Logan's trade dress.

for trade dress infringement (Count I) and false advertising (Count II), as well as related claims for deceptive trade practices (Count III) and unfair competition (Count IV). (A copy of Logan's Complaint is attached hereto as Exhibit 6.) In response to the Complaint, Defendants have filed an Answer, Affirmative Defenses and Counterclaim. (A copy of Defendants' pleading is attached hereto as Exhibit 7)[4] Importantly, in this pleading, Defendants ultimately admit, among other things, that:

- Logan "has become the leader, in terms of sales, in the mat cutting materials market";

- Textus copied various design features of Logan's mat cutting tools;

- Textus has initiated a marketing effort to compete with Plaintiff by selling mat cutting tools (including its "Home Pro" and "Studio Pro") which are similar to Logan's "#301 Compact" and "#401 Intermediate";

- "Textus intended (and intends) to offer products comparable to those of Logan at a competitive price"; and

- Textus has only begun to enter this particular market.

(*See* Exhibit 7, pp. 3 - 4, 9,11 -13)

---

[4] On May 17, 2002, Logan filed a Motion to Dismiss the Counterclaim (which was filed on behalf of Textus, only). After obtaining several extensions of time, Textus ultimately filed a response on September 3, 2002. Although the Motion to Dismiss is still pending before the Court, the issues raised in the Counterclaim bear no relationship to Logan's Motion for Preliminary Injunction, and the Court's decision with respect to the Motion to Dismiss should in no way delay or affect the Court's consideration of or decision with respect to whether a preliminary injunction is appropriate in this case.

## ARGUMENT

### I.    Preliminary Injunction Standards

Under Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must first demonstrate the following: "(1) some likelihood of succeeding on the merits; [and] (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Pride Communications Ltd. v. WCKG, Inc.*, 851 F. Supp. 895, 900 (N.D. Ill. 1994) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Where these threshold tests are met, the court must then consider the "(3) irreparable harm to the non-moving party if preliminary relief is granted, 'balancing that harm against the irreparable harm to the moving party if relief is denied;' and (4) the interests of the public." *Id.*

Because Logan can satisfy each of the above elements, the Court should grant Logan's Motion and enter an order enjoining Defendants from manufacturing, selling, marketing, promoting, or in any way offering for sale, any products which incorporate the distinctive design features which combine to create Logan's valuable trade dress.

### II.    Logan Is Entitled To The Injunctive Relief It Seeks.

#### A.    Logan Is Likely To Prevail On The Merits Of Its Claims.

Logan can establish a reasonable likelihood of prevailing on each of its claims against Defendant that necessitate injunctive relief--namely, Logan's claims for trade dress infringement, false advertising, deceptive trade practices, and unfair competition. The Seventh Circuit has defined a "reasonable likelihood" to mean that a party's chances of prevailing are "better than negligible." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). A party's ability to make the requisite showing is strengthened where, as here, the balance of harms weighs heavily in

8

favor of the moving party. *See Cal City Optical, Inc. v. Pearle Vision, Inc.*, No. 93 C 7577, 1994 WL 114859, at *2 (N.D. Ill. Mar. 29, 1994) ("[T]he degree of likelihood of prevailing on the merits that a party must demonstrate 'decreases the more heavily the balance of harms weighs in its favor'") (quoting *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986)).

### 1.    Logan is likely to prevail on its claim for trade dress infringement.

The Seventh Circuit has explained that "trade dress" is a term of art used in connection with a product's overall image, including elements such as its size, shape, color, and graphics, and that it receives protection against infringement under § 43(a)(1) of the Lanham Act. *See Abbott Labs.*, 971 F.2d at 20. *See also* Thomas McCarthy, 1 "McCarthy on Trademarks and Unfair Competition" at 8-8 (3d ed. 1994)("While 'trade dress' traditionally referred to packaging and labeling of a product, the term has now been stretched to include the shape and design of the product itself.")

To prevail on a claim for trade dress infringement, a plaintiff must demonstrate that: (1) its "overall image" is inherently distinctive or has acquired distinctiveness through secondary meaning; and (2) the similarity of the defendant's trade dress causes a likelihood of confusion on the source or affiliation of the product. *See Abbott Labs*, 971 F.2d at 20; *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 380 (7th Cir. 1996). However, even if the plaintiff successfully establishes these elements, the defendant can raise "functionality" as an affirmative defense, although the defendant bears the burden of proof in establishing that the trade dress is, indeed, functional. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998); *Abbott Labs.*, 971 F.2d at 20.

9

### (a) Distinctiveness of Logan's trade dress

"Trade dress is protectible if it is inherently distinctive or if it has acquired distinctiveness through secondary meaning." *Celex Group, Inc. v. Executive Gallrey, Inc.*, 877 F. Supp. 1114, 1139 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)). In considering the distinctiveness of Logan's trade dress, the Court must consider "whether it is a common or basic shape or design, whether it is unique or unusual in part or whether it is a mere refinement of commonly adopted and well known forms of ornamentation for a particular class of goods." *Reed-Union Corp. v. Turtle Wax, Inc.*, 869 F. Supp. 1304, 1308 (N.D. Ill. 1994)(Plunkett, J.). As described herein and set forth above in the attached affidavits, Logan's trade dress has, for decades, incorporated non-functional design features, including, but not limited to, the shape of the extrusions on Logan's cutting tools, the size of its mat board, a consistent two-tone color scheme, and the use of vinyl laminate, which combine to create a unique overall image that sets Logan's tools apart from the designs and forms of presentation more commonly utilized by other companies in this industry. (*See* Affidavit of Brent Land, attached as Exhibit 3; Affidavit of Sam Albright, attached as Exhibit 4.) Furthermore, because the design elements comprising Logan's trade dress are, by no means, essential for the functionality of its tools, Logan's trade dress is inherently distinctive.

Even if the Court were to conclude at this point in the case that Logan does not have a "better than negligible" chance of establishing at trial that its trade dress is inherently distinctive, it is clear that Logan's trade dress has acquired distinctiveness through secondary meaning. This Court has acknowledged that "[a] secondary meaning exists when the primary significance of the mark or dress in the mind of the consuming public is not the product but the produce." *Reed-Union*, 869 F. Supp. at 1308. "Put another way, the public must associate the mark or dress with a single source." *Id.*

10

(where this Court, at trial, found that the plaintiff's trade dress-- comprised of a presentation of its name and product claims in black lettering on an orange, standard size, plastic bottle--was not inherently distinctive, but nevertheless was protectible because it had acquired secondary meaning.)

In considering the distinctiveness of Logan's trade dress under a "secondary meaning" analysis, it is clear that members of the relevant buyer class (comprised of ultimate consumers and dealers of mat cutting equipment) associate the unique color scheme, shape, size and overall image of Logan's trade dress with a single manufacturer--Logan. (*See* Affidavit of Brent Land, attached as Exhibit 3; Affidavit of Sam Albright, attached as Exhibit 4.) Logan's trade dress acquired secondary meaning as a result of the continuous and exclusive use of unique, non-functional design features in connection with two of its most popular cutting systems, the "#301 Compact" and the "#401 Intermediate" (and related mat cutting tools). In addition, this secondary meaning was derived from Logan's extensive promotion, advertising and sales of these products over the past decades. *See Celex*, 138 F.3d at 295 ("Under the Lanham Act, five years' use weighs strongly in favor of secondary meaning.") (citing 15 U.S.C. § 1052(f) (West 2002) (trademark commissioner may accept five years' exclusive and continuous use of a mark as *prima facie* evidence of secondary meaning)).

### (b) Likelihood of confusion

In addition to the fact that there is a strong likelihood that Logan will successfully establish at trial that its trade dress is distinctive, and therefore, entitled to protection as a matter of law, there is strong support for a finding that the public is likely to be confused by Defendants' use of design features which are virtually identical to those which Logan has incorporated into its products for decades. Indeed, Defendants' actions have already resulted in instances of actual confusion, even

11

among individuals who have been involved in this market for years and who are intimately familiar with Logan's trade dress. (*See* Affidavit of Brent Land, attached as Exhibit 3; Affidavit of Sam Albright, attached as Exhibit 4.)

Although evidence of actual confusion is only one of several factors which are used by the Seventh Circuit to evaluate the likelihood of confusion, it is often considered to be one of the most compelling. *See Thomas & Betts*, 138 F.3d at 297 (in considering whether a "likelihood of confusion" exists with respect to the trade dress of two competing products, "evidence of actual confusion, where it exists, is entitled to substantial weight.") In addition to evidence of actual confusion, the list of relevant factors includes: (1) similarity of the trade dresses; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's trade dress; (6) intent of the defendant to pass off his product as that of another. *See Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1234-35 (N.D. Ill. 1996) (citing *Forum Corp. of N. Am. v. Forum Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990)). While the weight accorded to each of the above factors varies from case to case, this Court has recognized that "[t]hree of these factors in the likelihood of confusion analysis are generally considered the most important-- the intent of the alleged infringer, evidence of actual confusion, and the similarity of trade dress." *Reed-Union*, 869 F. Supp. at 1314.

Consideration of these key factors, along with others considered within this Circuit, indicates that there is a strong "likelihood" that Defendants' actions, if unabated, will continue to cause confusion on the part of consumers as to the source or affiliation of Defendants' products. *See Abbott Labs.*, 971 F.2d at 22, n.7 (rejecting as "without merit" the defendant's argument that plaintiff

12

had failed to establish a likelihood of confusion where the district court had determined that the parties' products were "virtually identical").

In addition to the evidence of actual confusion, consideration of the similarities between the parties' trade dresses and products, and the area and manner of concurrent use, only further tilts the scale in Plaintiff's favor and supports a finding of a likelihood of confusion. The parties' respective products are identical, as the Textus "Home Pro" and "Studio Pro" mat cutting tools appear to be "knock-off" versions of Logan's "#301 Compact" and "#401 Intermediate", respectively, and Textus offers the same line of "accessory" tools (*e.g.*, a straight-edge cutting tool) which Logan offers in connection with its "#301 Compact" and "#401 Intermediate". Furthermore, the parties directly compete with each other in the art, craft, and hobby industry, as is demonstrated by Defendant's attendance at major industry trade shows, and their efforts to contact and sell mat cutting tools to the same dealers which have been doing business with Logan for years. Therefore, the trade dress in question is being used on directly competitive products sold through the same channels of trade. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 377 (7th Cir.) (holding that when the marks and trade dress in question are used on directly competitive products sold through the same channels of trade, less similarity is required between the marks to establish confusion.) Indeed, Textus has copied virtually every non-functional aspect of Logan's best-selling tools, resulting in not only a likelihood of confusion, but actual confusion. (*See* Affidavit of Brent Land, attached as Exhibit 3; Affidavit of Sam Albright, attached as Exhibit 4.)

Furthermore, the strength of Logan's trade dress and Defendants' wrongful intent in copying the key features of Logan's trade dress, weigh in Logan's favor. As set forth above, Logan's trade dress not only is inherently distinctive, but it also has acquired secondary meaning by virtue of

13

Logan's extensive promotion, advertising and sales of its products over the past decades, as well as Logan's continuous use of unique design features which--while not essential to the competitiveness of Logan's mat cutting tools--have become widely associated with Logan throughout the art materials industry. It is clear that Defendants, in entering this market, knew of and knowingly copied Logan's trade dress in order to profit upon the goodwill and widespread recognition associated with the Logan brand and its quality tools. In so doing, Defendants have willfully sought to confuse the public. Defendant's intent to cause and profit from such confusion is evidenced by the fact that Defendants--admittedly--copied Logan's tools in every visible respect, including Logan's trade dress. *See Reed-Union*, 869 F. Supp. at 1313 ("[I]ntent can be inferred when the defendant, with knowledge of plaintiff's trade dress, adopts a similar trade dress.")

Whether viewed individually or taken as a whole, consideration of the "confusion factors" illustrates that a strong likelihood of confusion exists in this case, and that in addition to the instances of actual confusion which have been documented and submitted in support of Logan's Motion, Defendants' continued use of Logan's trade dress is likely to continue to cause confusion, deception or mistake as to the source of the Textus mat cutting tools. As such, Plaintiff is likely to prevail on its claim for trade dress infringement.

### (c) Non-functionality of Logan's trade dress

Finally, Logan is likely to succeed on its trade secret infringement claim because it is clear that its trade dress is not not "functional." A particular trade dress is "functional" under § 43(a)(1) if "it is something that other producers of the product in question would have to have as part of the product in order to be able to compete effectively in the market. . . Put another way, a feature is functional if it "is one that is costly to design around or do without, rather than one that is costly to

14

have." *Abbott Labs.*, 971 F.2d at 20 (citation omitted). The Seventh Circuit has explained that the term "costly," in this sense is means "costly in a way that will adversely affect a competitor's ability to produce and market a product of comparable price and quality." *Id.* See also, *Thomas & Betts*, 138 F.3d at 297 ("The fact that the feature at issue serves some function is not enough; to be functional in the trade dress sense, the feature must be 'necessary to afford a competitor the means to compete effectively.'"(citations omitted)). Logan's trade dress, which incorporates such easy-to-design-around elements such as color, shape, and size, is clearly nonfunctional. Indeed, the fact that for years, mat cutting manufacturers in this highly competitive industry have used different colors, shapes and materials into their product designs and produced mat cutting tools of different sizes, attests not only to the fact that alternative designs are possible, but also that alternative designs can, and do, remain competitive. (*See* Affidavit of Sam Albright, attached as Exhibit 4.)

### 2. <u>Logan is likely to prevail on its claim for false advertising</u>.

To successfully state a claim for false advertising under section 43(a)(1)(B) of the Lanham Act, Logan must show that Defendants: (1) made a false or misleading statement (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience (3) on a subject material to the decision to purchase the goods (4) touting goods entering interstate commerce (5) that results in actual or probable injury to Logan. *Gorgonz Group, Inc. v. Marmon Holdings, Inc.*, No. 00 C 2992, 2001 WL 103406, at *3 (N.D. Ill. Jan. 30, 2001).

Logan's claim easily meets this test. Textus falsely represented to Logan's customers that its own tools were exact copies of Logan's, when, in actuality, they were of an inferior quality. Because Defendants' tools visually appear to be the same as Logan's products, Defendants' statements are likely to deceive a substantial segment of those contacted. Defendant's goods enter

interstate commerce when sold, and Logan is injured by each sale as a result of Defendants' false advertisement. Therefore, Logan is likely to prevail on its claim for false advertising under the Lanham Act.

### 3. Logan is likely to succeed on its claims for unfair competition and deceptive trade practices.

To prevail on consumer confusion claims under the common law tort of unfair competition and the Illinois Deceptive Trade Practices Act, a plaintiff need only prove that it has prior rights in the intellectual property at issue, and that the defendant's actions are likely to cause consumer confusion, deception or mistake. *Intermatic*, 947 F. Supp. 1227, 1234 (N.D. Ill. 1996). There is no doubt that Logan owns prior rights in the distinctive trade dress it has been using for years, as Defendants only recently began such use. Thus, the first prong of the two-prong test is satisfied. Moreover, as explained above, there is a likelihood of confusion between the parties' products.

Logan also is likely to prevail on its claim based upon Defendants' violation of the Illinois Deceptive Trade Practices Act's prohibition on the publicizing of untrue or misleading statements that disparage another's goods or services. The same facts that give rise to Defendants' liability under the Lanham Act's prohibition of false advertising also set forth a claim under this cause of action. *See Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001).

### B. Logan Has No Adequate Remedy At Law And, Accordingly, Will Suffer Irreparable Harm In The Absence Of Injunctive Relief.

The Seventh Circuit has long recognized that "the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). In addition, iIt is well established in the Seventh Circuit, that in cases involving trademark

16

infringement, "the court may presume that irreparable injury will result where there is a likelihood of proving consumer confusion." *Pride Communications*, 851 F. Supp. at 903. Thus, for the reasons set forth above, Logan can easily establish this element entitling it to preliminary injunctive relief as a matter of law.

Logan will suffer irreparable harm in the absence of preliminary injunctive relief, because, it has no authority or control over the quality of Defendant's goods, and, in fact, those goods are substandard in Logan's eyes. Thus, in the eyes of the public, Defendant's goods reflect negatively on Logan, resulting in irreparable harm to Logan's goodwill and its reputation for quality products. Because Logan is without an adequate remedy at law to stop Defendants' wrongful conduct, a preliminary injunction order is wholly appropriate and warranted. *See Consumer Sales & Mktg., Inc. v. Digital Equip. Corp.*, No. 95 C 5049, 1995 WL 548765, at * 4 (N.D. Ill. Sept. 13, 1995) ("[C]ase law in this jurisdiction holds that the damage to goodwill is not readily calculable. . . . Loss of goodwill or business reputation are recognized by courts in Illinois to be injuries for which money damages are inadequate.").

**C.    The Balance Of Harms Weighs Heavily In Logan's Favor.**

The "balancing of harms" requires a comparison between the harm that Logan would suffer from the wrongful denial of the requested relief and the harm that Defendants would suffer if the relief is granted. However, because Logan is highly likely to succeed on the merits of its claims, as demonstrated above, Logan should only need to show that this balance of harms tips slightly in its favor. *See Consumer Sales*, 1995 WL 548765, at *7 ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.").

17

Logan can easily make such showing, as its business is entirely comprised of the manufacture, promotion, and sale of mat cutters and mat cutter accessories, and the "#301 Compact" and "#401 Intermediate" are two of its best-selling and most profitable products. In contrast, Textus is a new-comer to this market, as its business has focused primarily on the import and export of textile products. Furthermore, notwithstanding Defendants' efforts to market "knock-off" tools and thereby compete with Logan, Logan has seen no evidence to indicate that Textus has any outstanding orders for its tools or that Textus has produced anything more than the prototype tools which it is actively marketing. Accordingly, the balance of hardships favors Logan.

**D.      The Injunctive Relief That Logan Seeks Will Not Harm The Public's Interest.**

Logan need only show that its requested injunctive relief will not <u>harm</u> the public's interest. However, Logan can show much more -- namely, that granting the relief it seeks will significantly <u>benefit</u> the public's interest, while denying such relief would pose significant harm to the public. Granting Logan's requested relief will allow the public to be free from confusion as to the source and quality of Defendants' products. However, if Textus is permitted to continue promoting, marketing and selling mat cutters to the public using Logan's trade dress and representing that its tools are the equivalent of Logan's, the public may mistakenly purchase the "knock-off" products believing that they are of the high quality associated with Logan. *See, e.g., Cal City*, 1994 WL 114859, at *1-2 (noting that "[t]he public's interest in avoiding consumer confusion and maintaining quality control standards also weighs in [the manufacturer's] favor" and that "[t]he resulting harm to consumer confidence in [the manufacturer's] name if production processes are not adhered to [by the distributor] is not quantifiable or reparable").

18

## **CONCLUSION**

Accordingly, for all the foregoing reasons, Logan respectfully requests that this Honorable Court grant its Motion for Preliminary Injunction and enter an order consistent with the relief requested therein.


Dated: September 13, 2002

Respectfully submitted,

One of the Attorneys for Plaintiff,
LOGAN GRAPHIC PRODUCTS, INC.

Kristin J. Achterhof (No. 06206476)
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
Phone  (312) 902-5200
Fax     (312) 902-1061

# SEE CASE FILE FOR EXHIBITS