IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
NOV 0 8 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| LOGAN GRAPHIC PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 1823 |
| | ) | |
| v. | ) | |
| | ) | JUDGE PLUNKETT |
| TEXTUS USA, INC. (*d/b/a* Textus Industries, | ) | |
| Inc. *and* Textus Art & Craft) and | ) | |
| DAVID SMITH, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
NOV 12 2002

## NOTICE OF FILING

TO: See Attached Certificate of Service

PLEASE TAKE NOTICE that on November 8, 2002, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the attached Plaintiff's Reply Memorandum in Support of Motion for Preliminary Injunction, a copy of which is hereby served upon you.

_____
One of the Attorneys for Plaintiff,
LOGAN GRAPHIC PRODUCTS, INC.

Kristin J. Achterhof (No. 06206476)
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
Phone (312) 902-5200
Fax (312) 902-1061

## CERTIFICATE OF SERVICE

I, Kristin J. Achterhof, an attorney, hereby certify that I have caused copies of the foregoing Notice of Filing and Plaintiff's Reply Memorandum in Support of Motion for Preliminary Injunction to be served upon:

>Christopher A. Nichols, Esq.
>HUSCH & EPPENBERGER, LLC
>401 Main Street, Suite 1400
>Peoria, Illinois 61602
>
>Susan Somers Neal, Esq.
>Kevin J. McDevitt, Esq.
>NEAL & McDEVITT
>1603 Orrington Avenue
>Suite 2000
>Evanston, Illinois 60201
>
>Lee J. Schoen, Esq.
>SCHOEN MANGAN & SMITH, LTD.
>200 West Adams Street
>Suite 1005
>Chicago, Illinois 60606

*via* facsimile transmission and by U.S. Mail this 8th day of November, 2002.

_____
Kristin J. Achterhof

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
NOV 0 8 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| LOGAN GRAPHIC PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 02 C 1823 |
| ) | |
| v. ) | |
| ) | Judge Plunkett |
| TEXTUS USA, INC. (*d/b/a* Textus Industries, ) | |
| Inc. *and* Textus Art & Craft) and ) | |
| DAVID SMITH, ) | Magistrate Judge Mason |
| ) | |
| Defendants. ) | |

**DOCKETED** NOV 1 2 2002

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**I.   Introduction: An Overview Of Defendants' Response To Logan's Motion**

In responding to Plaintiff's Motion for Preliminary Injunction ("Response"), Defendants do not dispute the fact that Logan's best-selling "#301 Compact" and "#401 Intermediate" mat cutting tools and accessories incorporate unique design features, and that those design features combine to create a distinctive overall appearance that sets Logan's tools apart from those of its competitors. In addition, Defendants completely disregard the fact that this case presents strong evidence of secondary meaning, including, but not limited to, sworn statements attesting to the fact that the overall image and appearance of the "#301 Compact" and "#401 Intermediate" mat cutting systems have, over the years, become associated with Logan and the company's reputation for quality products. Furthermore, Defendants do not dispute the fact that Logan has, for years, extensively advertised, marketed and promoted these product lines, thereby reinforcing in the minds of the public a connection between Logan and the trade dress of its products.



At the same time, Defendants do not--and cannot--deny that they have copied essentially every visual design feature of Logan's best-selling products as part of a scheme to enter this niche market with as little effort and investment as possible. Furthermore, it is clear from Defendants' Response that they copied Logan's design knowing that there was a strong likelihood that Defendants' products would be confused as being the same as, or in some way related to, those of a respected, leading manufacturer.[1] Although Defendants attempt to downplay the likelihood of confusion by asserting that "labeling and packaging is the most common and effective way of informing purchasers as to the source of...goods," this argument fails to appreciate the context and manner in which mat cutting tools are marketed and sold.[2] (*See* Affidavit of Sam Albright (attached as Exhibit 4 to Plaintiff's Memorandum)("Albright Affidavit"), ¶ 7.) Moreover, Defendants completely disregard the fact that strong evidence of actual confusion already has been documented in this case, a factor which is entitled to "substantial weight" in evaluating Logan's request for injunctive relief.[3]

Rather than addressing directly the facts and claims advanced by Logan in support of its Motion, Defendants' Response completely misconstrues the nature of Logan's claimed trade dress, as well as the relationship between "the policies of freedom to copy the elements of an expired utility patent and the exclusive rights conferred by federal trade dress law." *See Thomas & Betts*, 138 F.3d

---

[1] Indeed, Defendants admit that in copying Logan's best-selling products, they "set out to compete with Logan." (Response, p. 9.)

[2] *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir. 1998)(holding that the court must consider the likelihood of confusion "in light of what happens in the marketplace," and recognizing that labeling and packaging may not be sufficient to prevent confusion).

[3] *See Id.*, at 296.

2

at 285, 288 (establishing the prevailing Seventh Circuit rule that "federal trademark protection cannot be pre-empted by patent law," and that "there is no *per se* prohibition against features disclosed in a patent receiving trademark protection after the patent has expired."). Indeed, by relying almost exclusively upon the claims included in two expired utility patents--*neither of which identify or implicate Logan's trade dress*--and a distorted (and arguably, disingenuous) statement of the prevailing caselaw, Defendants fail to present any compelling reason, let alone, a viable defense, which would indicate that a preliminary injunction is anything but warranted in this case.

## II. Logan Is Likely To Prevail On The Merits Of Its Claims

As set forth more fully in Logan's Memorandum in Support of it Motion for Preliminary Injunction, in order to obtain a preliminary injunction, Logan must first demonstrate "some likelihood of success on the merits." *Motorola, Inc. v. DBTEL, Inc.*, No. 02 C 3336, 2002 WL 1610982, at *15 (N.D. Ill. July 22, 2002)(Mason, M.). In other words, Logan must show that its chances of prevailing at trial are "better than negligible." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). The more heavily the balance of harm weighs in the moving party's favor, the less the degree of likelihood of succeeding on the merits the moving party must show. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-898 (7th Cir. 2001)(affirming preliminary injunction in trademark infringement action based upon "the similarity of the marks, the intent of the defendant, and evidence of actual confusion.") For the reasons set forth herein, and in Logan's Motion for Preliminary Injunction and Memorandum, and based upon the evidentiary support provided by the affidavits attached to its Memorandum and the live testimony which Logan will present at the hearing on its Motion, Logan has more than met this and the other threshold requirements for injunctive relief.

A. <u>**Defendants' Arguments Are Not Supported By The Facts or Prevailing Law**</u>

In opposing Logan's Motion, Defendants rely almost exclusively on a contorted interpretation of the ruling in *Traffix Device, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001), arguing that this decision essentially precludes a claim for trade dress protection with respect to *any* feature of *any* product which once was the subject of a utility patent. Specifically, Defendants claim that *Traffix* supports the position that a party's competitors are free to copy any and all features of "a product (cumulatively and as viewed in its component parts) for which [that party] obtained patent protection." (Response, p. 4.) However, Defendants' position blatantly misrepresents the holding in *Traffix* and completely disregards prevailing Seventh Circuit authority. *See, e.g., Thomas & Betts*, 138 F.3d 277 (7th Cir. 1998).

In a misguided attempt to align the facts of this case with those at issue in *Traffix*, Defendants also present a distorted view of (1) the nature and scope of Logan's trade dress, and (2) the expired utility patents which purportedly form the basis for Defendants' opposition. Specifically, Defendants claim that "the products...on which Plaintiff bases its trade dress and related claims, were previously protected by patent," and the "fact that these products are off-patent explains why Textus was and is free to compete as it has." (Response, p. 4.) Defendants then proceed to erroneously reference two expired utility patents, which, in contrast to the situation in *Traffix*, do not "claim" or in any way implicate the specific combination of design features for which Logan seeks trade dress protection in this case. (Copies of U.S. Patent Nos. 3,996,827, and 4,158,977, are attached hereto as Exhibits A and B, respectively.) Indeed, none of the trade dress features specified in Logan's

4

Complaint or moving papers are covered by, or mentioned in, the claims of these expired patents.[4/] Moreover, one of the patents identified by Defendants, U.S. Patent No. 3, 996,827, relates to a product that Logan no longer manufactures, and clearly has no bearing whatsoever on the trade dress or products at issue in this case. (*See* Exhibit A.)

### 1. The *TrafFix* Decision

In *Traffix*, the Supreme Court ostensibly sought to resolve a conflict between the circuits (noting the distinction between the rules followed by the Seventh and Federal Circuits, and the Tenth Circuit) as to whether mere disclosure of a product feature in an expired patent automatically precludes trade dress protection for that feature. However, the Supreme Court did not in fact resolve that conflict: "We need not resolve this question. If, despite the rule that a case arises in which trade dress becomes the practical equivalent of an expired utility patent, that will be time enough to consider the matter." *Id.* at 1263. *See McCarthy on Trademarks*, § 6.10 (2001)("Thus, while the Supreme Court left the issue open, the message between the lines is that the functionality rule is an adequate safeguard to ensure that there is no conflict between patents and trade dress."). Ultimately, the Supreme Court's holding in *Traffix* left untouched the rule of this circuit, as articulated in *Thomas & Betts*, that trade dress is protectable where non-functional, even if it is composed of features claimed in an expired patent.

In *Traffix*, the plaintiff held two patents for a "dual-spring design" mechanism used to keep outdoor signs upright despite adverse wind conditions. *See Traffix*, 532 U.S. at 26, 121 S.Ct. at

---

[4/] Although Defendants repeatedly reference and rely upon the expired patents identified in their Response, they chose not to produce copies of the patents for the Court's inspection. However, upon examination of the claims made in the expired patents, it is clear that Logan's non-functional design features at issue in this case are in no way covered, claimed or mentioned.

5

1257. When these patents expired, the defendant copied the mechanism and sold what was essentially a copy of the plaintiff's sign. *Id.* The plaintiff brought suit against the defendant, claiming that *the dual-spring design, in and of itself,* was subject to trade dress protection under the Lanham Act. *Id.* at 1257 ("the one element of [plaintiff's] trade dress at issue was the dual-spring design").

In its decision, the Court stated that "[a] utility patent is strong evidence that the features therein claimed are functional," and that "[w]here the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 1260. The Court then placed this burden of proof on the plaintiff, focusing on the fact that "[i]n the case before us, the central advance claimed in the expired utility patents...is the dual-spring design; and the dual-spring design is the essential feature of the trade dress [plaintiff] now seeks to establish and to protect." *Id.* In so doing, the Court relied on the fact that the plaintiff did not seek protection for decorative visual elements, but instead sought trade dress protection for nothing more than the very same design which had been expressly claimed in and protected by the expired utility patents. *Id.* at 1262 ("The asserted trade dress consists simply of the dual-spring design, four legs, a base, an upright, and a sign."). Importantly, the Court distinguished the facts in *Traffix* from "a case where a manufacturer seeks to protect arbitrary or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs..." *Id.* (noting that "[t]here the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent.").

### 2. Defendants Mischaraterize Logan's Expired Patents

6

As an initial matter, Defendants not only fail to provide the Court with copies of the expired patents, but they also go so far as to inaccurately present them to the Court. As mentioned previously, Logan no longer produces the tool identified in U.S. Patent No. 3,996,827, and it is not one of the products at issue in this case. Furthermore, although the patent identified in Exhibit B claims protection for the functional features of a mat cutting tool, it does not claim protection for any of the elements of Logan's trade dress which Defendants have copied. (*See* Exhibit B, pp. 2-4.) While the patent makes mention of the functionalities derived from a ruler, a tension spring and an "anti-crawl pin," only the operational qualities of these parts are referenced. (*Id.* at 3). Nowhere in the expired patent does Logan claim protection for the other arbitrary and ornamental features identified in this case as Logan's trade dress. (*See* Logan's Motion, pp. 4-5.)

In their Response, Defendants essentially argue that because Logan once received patent protection for the functional design components claimed in a patent covering one of its mat cutting tools, Logan now is precluded from obtaining trade dress protection for the distinctive, non-functional design features of this tool and other products included with its "#301 Compact" and "#401 Intermediate" mat cutting systems. However, Defendants' position is not supported by the *Traffix* decision, and it is clearly inapposite to the law of this Circuit. *See Thomas & Betts*, 138 F.3d at 288 (holding that a patent for a two-piece cable did not bar trade dress protection for the shape of the tie).

### 3. <u>Logan's Trade Dress Is Non-Functional</u>

Although Defendants attempt to characterize certain of the individual design features comprising Logan's trade dress as "functional," they present no rational basis for concluding that Defendants, or, for that matter, any of Logan's competitors, would find any of the elements of

7

Logan's trade dress *"necessary* to incorporate into their product in order to compete effectively." *See Sara Lee Corp. v. Am. Leather Products, Inc.,* No. 97 C 4158, 1998 WL 433764 (July 29, 1998, N.D. Ill.) In addition, Defendants' analysis of "functionality" is wholly inconclusive, as Defendants fails to consider "the overall appearance of the product in order to determine whether the total combination and arrangement of features is entitled to protection." *Id.* at 14. Furthermore, Defendants present no rational basis whatsoever for concluding that any one of the design features are *essential* for the functionality of its tools.

It is the law of this Circuit that once Logan satisfies the elements of a claim for trade dress infringement, the burden is on Defendants to show that the trade dress is indeed functional. *See Thomas & Betts,* 138 F.3d at 291.[5] However, Defendants have not, as indeed they cannot, sustain that burden, because Logan's trade dress is entirely non-functional. Defendants ignore completely the distinction between the functional elements of Logan's mat-cutting tools and the non-functional nature of Logan's trade dress. As set forth in Logan's Memorandum, a specific trade dress is functional if it would be costly to design around or to omit. In this context, "costly" means that the change would "adversely effect a competitor's ability to produce and market a product of comparable price and quality." *See Abbott Labs v. Mead Johnson & Co.,* 971 F.2d 6, 20 (7th Cir. 1992) (citation omitted). In short, the feature must be *necessary* to be competitor's ability to compete. *See Thomas & Betts,* 138 F.3d at 297.

---

[5] Indeed, because Logan's expired utility patents do not claim protection for the distinctive design features comprising Logan's trade dress, the facts in this case are distinguishable from those in *Traffix,* and Logan is not required to "carry the heavy burden of showing that the feature is not functional." *See Traffix,* 121 S.Ct. at 1260.

8

The evidence establishes that Logan's trade dress--which consists of features such as color, shape and size-- is quite easy to design around. The various manufacturers of mat-cutting tools have, for years used different colors, shapes, and materials for their products, which they produce in a range of different sizes. Use of Logan's trade dress is clearly not necessary for the other manufacturers to compete. Indeed, the sworn testimony presented with Logan's Memorandum and the testimony that will be presented at the hearing in this case will show that alternative designs are, in fact, competitive in this industry.

Defendants' assertions regarding the functional nature of Logan's trade dress are anything but compelling. For example, Defendants assert that Logan's selection of the color black is not arbitrary, but functional, to provide contrast to the "undersides and insides" of "[t]he mats to be cut...". (*See* Response, at 10.) However, this argument completely misconstrues the concept of "functionality," as defined by the Seventh Circuit. In this Circuit, a "feature is functional if it is one that is costly to design around or to do without...." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989).

The evidence will show that Defendants' argument misrepresents the mat cutting process, itself, and the fact that mat paper is available in many colors, including dark colors for which black provides no contrast, even assuming this were essential to the functionality of the product. Further, competitors of Logan's have selected colors other than black for their boards, and a black board is not necessary for the functionality or competitiveness of the product. Finally, Defendants provide no evidence to support their assertion that the choice of a different color scheme would adversely affect their ability to produce a mat-cutting board of comparable price and quality. *See Abbott Labs*, 971 F.2d at 20. In fact, even the affidavit which Defendants attach to their Response states without

9

qualification that the boards are often *not* black. (*See* Affidavit of Michael T. Hill, attached to Defendants' Response ("Hill Affidavit")). *See also Thomas & Betts,* 138 F.3d at 197 ("The fact that the feature at issue serves *some* function is not enough; to be functional in the trade dress sense, the feature must be "necessary to afford a competitor the means to compete effectively.")(emphasis added).

Unlike the plaintiff in *Traffix*, Logan does not seek to claim trade dress protection for a functional feature it claimed in an expired patent. Rather, Logan seeks trade dress protection for visual, ornamental and arbitrary features of its mat cutting systems which were not identified or in any way protected by its now-expired patents. Indeed, even if Logan were required under the facts of this case to bear the "heavy burden" of proving that its trade dress is non-functional, it certainly could do so.

### B. Logan Is Likely To Prevail On The Merits Of Its Trade Dress Claim

#### 1. Logan's Trade Dress Is Distinctive

The distinctiveness of Logan's trade dress arises not from the isolated functional components upon which Defendants incorrectly focus. Rather, Logan's trade dress consists of a myriad of non-functional elements which are arbitrary and ornamental. The "overall image" created by the combination of these features is what has, for years, distinguished Logan's products from every other mat-cutting tools on the market. Logan can easily demonstrate that it has a "better than negligible" chance of prevailing on its claim of distinctiveness. *See Abbott*, 971 F.2d at 20.

For decades, Logan has incorporated the non-functional design features described above, which include, but are not limited to, the use of vinyl laminate, the shape of the extrusions on Logan's cutting board, the size and shape of the board itself, and the color scheme chosen by Logan.

These features and others combine to create a unique appearance that distinguishes Logan's mat-cutting tools from those of the other manufacturers in this industry. Logan can show that these features are non-functional, arbitrary and ornamental. The affidavit upon which Defendants rely states, incredibly, that mat-cutters "all roughly look the same..." (Hill Affidavit, ¶ 5.) Examination of examples of a other mat-cutting tools and accessories which are sold competitively in this market show that this statement simply is not true.

Although Logan's trade dress is inherently distinctive, it has, alternatively, accquired distinctiveness through "secondary meaning." Secondary meaning exists when the consuming public associates the trade dress with a single source. *See Reed-Union Corp. v. Turtle Wax, Inc.* 869 F. Supp. 1304, 1308 (N.D. Ill. 1994). Logan's trade dress acquired secondary meaning because Logan used a unique, non-functional design for decades. *See Celex Group Inc. v Executive Gallery, Inc.*, 877 F. Supp. 1114, 1139 (N.D. Ill 1995). The affidavits submitted by Logan illustrate that ultimate consumers and dealers of mat cutting equipment associate the unique combination of color, shape, size, and overall image with one manufacturer, Logan. In addition, Sam Albright, an executive the industry with decades of experience, and a competitor of Logan, has stated that customers associate Logan's trade dress with the high quality of Logan's products. (*See* Albright Affidavit, ¶ 3).

### 2. Defendants' Products Have Caused Confusion

Defendants argue that the fact that its name appears on its tools and packaging is sufficient to dispel confusion in the marketplace. Logan has already presented evidence that individuals--even "experts" in this industry--have become confused as to the source of Defendants' products, believing them to be manufactured by Logan, notwithstanding labeling and packaging.

11

Furthermore, Defendants ignore the law of this Circuit, which requires that the Court consider a number of factors in evaluating the likelihood of consumer confusion, including whether there is any evidence of actual confusion.[6] Application of these factors, all of which favor Logan, indicate that individuals will likely be--and already are--confused by Defendants' copies.

Not only have consumers already been confused by the similarity between the products, but this confusion is likely to continue if Defendants continue to infringe upon Logan's trade dress. Defendants have admitted to copying Logan's trade dress. In addition, the parties directly compete within a niche industry. Moreover, Logan's trade dress is quite strong, which is why Defendants copied it; they clearly hope to profit from Logan's trade dress. It is clear in this case that the three most important factors in this analysis, the infringer's intent; the evidence of actual confusion, and the similarity of trade dress, all strongly favor Logan. *See Reed-Union*, 869. F. Supp. at 1314. Logan has clearly established that it is likely to succeed on the merits of its trade dress claim.

### C. Logan Is Likely To Prevail On Its Claim For False Advertising

Defendants' only response to Logan's false advertising claim is to assert that Logan failed to identify any false or misleading statements. Logan did, however, state that Defendants falsely represented to Logan's customers that its own tools were exact copies of Logan's products, when they are in fact of inferior quality. Defendants ignore the fact that Logan's false advertising claim easily meets the test for such claims, in that Defendants (1) made false statements as to the quality of Logan's products to Logan's customers; (2) these statements have caused actual confusion among the advertisement's audience; (3) the statements were made on a subject material to consumers'

---

[6] These factors are (1) similarity of trade dress; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the plaintiff's trade dress; and (6) intent of the defendant to pass of his product as that of another. *See Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1234-35 (N.D. Ill. 1996).

12

purchasing decisions; and (4) this would result in probably injury to Logan, in that each sale lost is revenue forgone. *See Gorgonz Group, Inc. v. Marmon Holdings, Inc.*, No. 00 C 2992, 2001 WL 103406, at *3 (N.D. Ill. Jan. 30, 2001). Thus, Logan is likely to prevail on its claim for false advertising under the Lanham Act.

### D. Logan Is Likely To Prevail On Its Claims For Unfair Competition And Deceptive Trade Practices

Defendants do not respond to Logan's argument that Logan is likely to succeed on its claims for unfair competition and deceptive trade practices. As Logan explained in its Memorandum, to establish its claim for unfair competition, it need only show that it has prior rights in its trade dress, and that Defendants' actions are likely to cause consumer confusion, deception, or mistake. *See Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1234-35 (N.D. Ill. 1996). Logan is likely to prevail on both counts. Defendants are new to this market, whereas Logan has been in the market for decades and has owned its prior rights in its distinctive trade dress for over 20 years.

Defendants also ignore Logan's argument that it is likely to prevail on its claim for deceptive trade practices. Logan has established that Defendants have made false statements that disparage Logan's products. This is sufficient to establish a reasonable likelihood that Logan will prevail on the merits of this claim. *See Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 398, 413 (N.D. Ill. 2001).

### III. Logan Has No Adequate Remedy At Law And Will Suffer Irreparable Harm Without Injunctive Relief

Defendants erroneously argue that because Logan owns two expired utility patents, it is entitled to no trade dress protection and therefore cannot show irreparable harm. However, for the reasons set forth previously, Logan can easily establish that its trade dress is both non-functional and

13

distinctive. Logan has already shown that Defendants' copies have caused actual confusion in the marketplace. Defendants simply ignore the Seventh Circuit's holding that in trademark cases, the Court may presume that irreparable injury results where a plaintiff can show a likelihood of proving consumer confusion. *See Pride Communications Ltd. v. WCKG, Inc.,* 851 F. Supp. 895, 903 (N.D. Ill. 1994).

Further, Defendants ignore Logan's argument that damages are inadequate because damage to goodwill is difficult to calculate. *See Consumer Sales & Mktg., Inc., v. Digital Equip. Corp.*, No. 95 C 5049, 1995 WL 548765, at *4 (N.D. Ill. Sept. 13, 1995). If Defendants are permitted to continue to pursue the sale of their knock-off products, their substandard quality will cause irreparable harm to Logan's reputation for quality products.

Finally, Defendants argue that Logan's so-called "delay" in bringing this action negates its request for injunctive relief. Defendants, however, know full well that Logan has granted their repeated requests for extensions in filing its various papers with this Court. Defendants are also aware that Logan has tried in good faith to settle this case. Logan attempted to mediate its claims with Defendants, to no avail. Logan filed its Motion for Preliminary Injunction on the eve of mediation to protect its rights in the event the parties were not able to reach an accord.

### IV. The Harm To Logan Heavily Outweighs The Harm To Defendants

Defendants' argument that the harm to Logan would be negligible should Defendants be permitted to market products that copy Logan's trade dress is disingenuous at best. Defendants would not have entered this industry had it not intended to steal significant market share from Logan. Were Defendants permitted to continue to inundate the market with its copies of Logan's trade dress, it is clear that Logan would suffer a significant loss in sales. Defendants, however, has made no

14

showing that it has any outstanding orders for its tools, or that they have produced anything more than a prototype. Consequently, the balance of hardships clearly favors Logan. *See Consumer Sales*, 1995 WL 548765, at *7. Therefore, Logan need only show a truly "negligible" chance of prevailing on the merits of its trade dress claim. See *Cal City Optical Inc. v. Pearle Vision*, No. 93 C 7577, 1994 WL 114859, at *2 (N.D. Ill. Mar. 29, 1994).

## V. Enjoining Defendants From Copying Logan's Trade Dress Will Not Harm the Public Interest

Defendants erroneously argue that the public interest will be harmed if Logan's request for injunctive relief is granted because to do otherwise would injure U.S. patent law. As noted above, Defendants are incorrect that Logan's claims are based on transforming functional features into trade dress. Rather, Logan's claims are based on Defendants' copying of the many non-functional, arbitrary and ornamental features that comprise Logan's distinctive trade dress. Therefore, granting Logan's request for injunctive relief actually benefits the public interest because the public will not face confusion as the source and quality of Defendants' products, and because the public will not mistakenly purchase Defendants' inferior knock-off products, believing them to be highly-quality Logan products.

## CONCLUSION

Defendants' Response is nothing more than a contrived effort to obfuscate the paramount goal of trademark law in this country: to protect the public from confusion. Defendants' bald claims of patent preemption fail when the expired patents are examined consistent with prevailing Seventh Circuit. precedent. *See Thomas & Betts,* 138 F.3d at 288 (explaining that the mere disclosure of a product feature in the specification of an expired patent does not automatically preclude trade dress protection to that feature, and holding "that there is no per se prohibition against the features

disclosed in a patent receiving trademark protection after the patent has expired.") *See also 1 J. Thomas McCarthy*, McCarthy on Trademarks § 6.12 (4th ed. 1996)("[T]here is no direct causal relationship between expiration of a patent on a product and the legal protectability of a trademark on that product."). To argue that the ruling in *Traffix* obliterates trade dress protection for arbitrary, ornamental and/or otherwise non-functional design features, is a blatant misstatement of the holding in that case. *See Traffix*, 532 U.S. 23, 121 S.Ct. 1255 (refusing to overrule the law of this Circuit as set forth in *Thomas & Betts* and rejecting the proposition that non-functional features in a utility patent can never be the subject of trade dress.) In this case, the arbitary and ornamental elements of Logan's trade dress have never been claimed in or in any way covered by a patent. Furthermore, for the reasons set forth herein and in Logan's initial Memorandum, the trade dress at issue in this case is not "functional," as that term is defined in this Circuit. *See e.g., Thomas & Betts*, 138 F.3d at 297.[2]

The situation before the Court is simple: Defendants are attempting to manufacture, market, sell and import mat cutting tools which present the same overall image and appearance as Logan's "301 Compact" and "401 Intermediate," with the intent to pass them off as the same as or substantially similar to Logan's best-selling tools. If Defendants actions continue unabated, the confusion which has already occurred in the marketplace will proliferate, and Logan will suffer irreparable harm that outweighs any harm Defendants-- newcomers to this market with minimal, if

---

[2] Again, Defendants completely ignore the fact that for years, mat cutting manufacturers in this highly competitive industry have used different colors, shapes and materials in designing mat cutting tools of varying sizes. (*See* Affidavit of Sam Albright, Exhibit 4 to Plaintiff's Memorandum.) This uncontested fact confirms that alternative designs are not only possible, but that they can, and do, remain competitive in the marketplace. *See Abbott Labs*, 971 F.2d at 20; *Thomas & Betts*, 138 F.3d at 297.

any, investment at this point--could possibly suffer if their illegal activities were enjoined. Accordingly, this Court should grant Logan's Motion for Preliminary Injunction.

Dated: November 6, 2002

Respectfully submitted,

*[signature]*

One of the Attorneys for Plaintiff,
LOGAN GRAPHIC PRODUCTS, INC.

Kristin J. Achterhof (No. 06206476)
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
Phone (312) 902-5200
Fax (312) 902-1061

# SEE CASE FILE FOR EXHIBITS