FILED

DEC 6 2002

MICHAEL T. MASCH
MICHAEL T. MASCH MAGISTRATE JUDGE
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

RECEIVED

DEC - 6 2002
MICHAEL W. DOBBINS
U.S. DISTRICT COURT

DOCKETED

DEC 1 0 2002

FILED

DEC 6 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOGAN GRAPHIC PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 02 C 1823** |
| | ) | |
| v. | ) | |
| | ) | **JUDGE PLUNKETT** |
| TEXTUS USA, INC. (*d/b/a* Textus Industries, | ) | |
| Inc. *and* Textus Art & Craft) and | ) | |
| DAVID SMITH, | ) | **Magistrate Judge Mason** |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING**

TO:    See Attached Certificate of Service

PLEASE TAKE NOTICE that on December 6, 2002, we filed with the Clerk of the United

States District Court for the Northern District of Illinois, Eastern Division, the attached Plaintiff's

Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, a copy of

which is hereby served upon you.

David Roseth

One of the Attorneys for Plaintiff,
LOGAN GRAPHIC PRODUCTS, INC.

Kristin J. Achterhof (No. 06206476)
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
Phone (312) 902-5200
Fax    (312) 902-1061

46

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Logan's Distinctive Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Defendants' Efforts To Copy Logan's Trade Dress . . . . . . . . . . . . . . . . . . . . 5

    III.   Logan's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     Preliminary Injunction Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.    Logan Is Likely To Prevail On The Merits Of Its Claims . . . . . . . . . . . . . . . . . 9

          A.    Logan Is Likely To Prevail On Its Claim For Trade Dress Infringement  10

                1.    Logan's Trade Dress Is Distinctive . . . . . . . . . . . . . . . . . . . . . 10

                2.    There Is A Strong "Likelihood Of Confusion" . . . . . . . . . . . . . 12

          B.    Defendant's Arguments Are Not Supported By The Facts On Prevailing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                1.    The *TrafFix* Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                2.    Defendants Mischarachterize Logan's Expired Patents . . . . . . . 17

                3.    Logan's Trade Dress Is Non-Functional . . . . . . . . . . . . . . . . . . 18

          C.    Logan Is Likely To Prevail On Its State Law Claims . . . . . . . . . . . . . 21

    III.   Logan Has No Adequate Remedy At Law And, Accordingly, Will Suffer Irreparable Harm In The Absence Of Injunctive Relief . . . . . . . . . . . . . . . . . . 21

    IV.   The Balance Of Harms Weighs Heavily In Logan's Favor . . . . . . . . . . . . . . . 22

    V.    The Injunctive Relief That Logan Seeks Will Not Harm The Public's Interest . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

# TABLE OF AUTHORITIES

## Statutes and Rules

15 U.S.C. § 1052(f) (West 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rule of Civil Procedure 65(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Cases

*Abbot Labs v. Mead Johnson & Co.,* 971 F.2d 6 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . passim

*Cal City Optical Inc. v. Pearle Vision, Inc.,* No. 93 C 7577, 1994 WL 114859
(N.D. Ill Mar. 29, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F. Supp. 1114 (N.D. Ill. 1995) . . . . . . . . . . . 11

*Consumer Sales & Marketing, Inc. v. Digital Equipment Corp.,* No. 95 C 5049,
1995 WL 548765 (N.D. Ill. Sept. 13, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 94 F.3d 376 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 10

*Forum Corp. of N. Am. v. Forum Ltd.,* 903 F.2d 434 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . 13

*Intermatic Inc. v. Toeppen,* 947 F. Supp. 1227 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . 13

*Motorola, Inc. v. DBTEL, Inc.,* No. 02 C 3336, 2002 WL 1610982 (N.D. Ill. July 22, 2002) . . . 9

*Pride Communications Ltd. v. WCKG, Inc.,* 851 F. Supp. 895 (N.D. Ill. 1994) . . . . . . . . . . . 9, 21

*Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852 (7th Cir. 1982) . . . . . . . 21

*Reed-Union Corp. v. Turtle Wax, Inc.,* 869 F. Supp. 1304 (N.D. Ill. 1994) . . . . . . . 11, 12, 13, 14

*Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380 (7th Cir. 1984) . . . . . . . . . . . . . . . 9

*Sara Lee Corp. v. Am. Leather Products, Inc.,* No. 97 C 4158, 1998 WL 433764
(N.D. Ill July 29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Schwinn Bicycle Co. v. Ross Bicycles, Inc.,* 870 F.2d 1176 (7th Cir. 1989) . . . . . . . . . . . . . . . . 20

*Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277 (7th Cir. 1998) . . . . . . . . . . . . . . . . passim

*Traffix Device, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 121 S.Ct. 1255 (2001) . . . . . . . . passim

*Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . . 14

**Other**

J. Thomas McCarthy, *1 McCarthy on Trademarks and Unfair Competition,* § 6.10 (2001) . . . 16

J. Thomas McCarthy, *1 McCarthy on Trademarks and Unfair Competition,* § 6.12
(4th ed. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition,*
§ 8.8 (3d ed..1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOGAN GRAPHIC PRODUCTS, INC.,    )
    )
    Plaintiff,    )    Case No. 02 C 1823
    )
    v.    )
    )    Judge Plunkett
TEXTUS USA, INC. (*d/b/a* Textus Industries,    )
Inc. *and* Textus Art & Craft) and    )
DAVID SMITH,    )    Magistrate Judge Mason
    )
    Defendants.    )

**FILED**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
DEC 6 2002

**DOCKETED**
DEC 1 0 2002

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Logan Graphic Products ("Logan" or "Plaintiff"), by its attorneys, hereby submits

its Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction

against Defendants, Textus USA, Inc. (*d/b/a* Textus Industries, Inc., and Textus Art and Craft),

and its owner and Chief Executive Officer, David Smith[1] (together, "Textus" or "Defendants"):

### INTRODUCTION

Over the past twenty-eight years, Logan has been engaged in the manufacture, marketing

and sale of its now-famous line of mat cutting tools and accessories, and has invested substantial

sums in advertising, promoting, marketing and offering its distinctive line of products for sale

throughout the United States and around the world. With the intent to trade upon the widespread

recognition and goodwill associated with Logan's unique trade dress, Defendants recently entered

the mat cutting market by promoting and offering for sale mat cutting tools and accessories which

---

[1]Textus has admitted paragraph 3 of its Answer filed in this case that "David Smith is the owner and CEO of Textus Industries, Inc. and that he, in furtherance of and execution of his duties appurtenant to that position, authorized certain business activities which Plaintiff may challenge in this lawsuit."

46

incorporate the same nonfunctional design features as used by Logan's best-selling line of products.  Notwithstanding Logan's requests that Textus cease and desist, and in complete disregard of the irreparable harm and actual confusion which has resulted from Defendants' unlawful activities, Defendants have continued to copy and exploit the design features associated with Logan's famous products.  Accordingly, Logan now seeks a preliminary injunction order to protect the public from confusion as to the source of Defendants' products, and to preserve the widespread recognition and goodwill associated with Logan's valuable trade dress.

At the same time, Defendants do not--and cannot--deny that they have copied essentially every visual design feature of Logan's best-selling products as part of a scheme to enter this niche market with as little effort and investment as possible.  Furthermore, it is obvious that Defendantscopied Logan's design knowing that there was a strong likelihood that Defendants' products would be confused as being the same as, or in some way related to, those of a respected, leading manufacturer.[2]  Although Defendants attempt to downplay the likelihood of confusion by asserting that "labeling and packaging is the most common and effective way of informing purchasers as to the source of...goods," this argument fails to appreciate the context and manner in which mat cutting tools are marketed and sold.[3]  (*See* Plaintiff's Exhibit No. 5, ¶ 7; Transcript, pp. 33-48; 194 - 196.)  Moreover, Defendants completely disregard the fact that strong evidence of

---

[2]Indeed, Defendants admit that in copying Logan's best-selling products, they "set out to compete with Logan." (Response, p. 9.)

[3]*See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir. 1998)(holding that the court must consider the likelihood of confusion  "in light of what happens in the marketplace," and recognizing that labeling and packaging may not be sufficient to prevent confusion).

2

actual confusion already has been documented in this case, a factor which is entitled to "substantial weight" in evaluating Logan's request for injunctive relief.[4]

Rather than addressing directly the facts and claims advanced by Logan in support of its Motion, Defendants completely misconstrue the nature of Logan's claimed trade dress, as well as the relationship between "the policies of freedom to copy the elements of an expired utility patent and the exclusive rights conferred by federal trade dress law." *See Thomas & Betts*, 138 F.3d at 285, 288 (establishing the prevailing Seventh Circuit rule that "federal trademark protection cannot be pre-empted by patent law," and that "there is no *per se* prohibition against features disclosed in a patent receiving trademark protection after the patent has expired."). Indeed, by relying almost exclusively upon the claims included in two expired utility patents--*neither of which identify or implicate Logan's trade dress*--and a distorted (and arguably, disingenuous) statement of the prevailing caselaw, Defendants fail to present any compelling reason, let alone, a viable defense, which would indicate that a preliminary injunction is anything but warranted in this case.

Based upon the facts and evidence presented to the court during the evidentiary hearing on November 12, 2002, and for the reasons set forth herein and in Logan's Motion for Preliminary Injunction and its Memorandum of Law filed in support thereof, Logan has established the following: (1) a likelihood of success on the merits of its underlying claims against Defendants; (2) that Logan has no adequate remedy at law and, as a result, has suffered and will continue to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of harms weighs strongly in Logan's favor; and (4) that injunctive relief would surely benefit the

---

[4]*See Id.*, at 296.

public interest.  (Attached hereto as Exhibit ____ is a copy of Logan's proposed preliminary injunction order.)

## BACKGROUND FACTS

On November 12, 2002, this Court conducted an evidentiary hearing, at which time the parties presented live witness testimony and affidavits of third-parties, and submitted as exhibits actual samples of their respective products and those of Logan's competitors, photographs depicting these products, several industry catalogs offering Logan's mat cutting equipment, advertisements for Logan's #301 Compact and #401 Intermediate mat cutting systems, promotional "sales sheets" distributed by Defendants depicting their infringing products, and other relevant documents and items.[5/]

### I.    Logan's Distinctive Trade Dress

For over a quarter of a century, Logan has been selling mat-cutting tools in the art materials market.  (*See* Transcript, p. 20.)    Over the years, as a result of its substantial advertising outlays and the advertising conducted by its distributors and retailers of its products, Logan has become one of the leading manufacturers of mat cutting tools worldwide, and the Logan brand has achieved wide-spread recognition for its association with the products marketed and sold under the Logan mark and displaying Logan's distinctive trade dress. (See Transcript, pp. 28, 49-50.) The Logan line of products, including, but not limited to, the best-selling "#301

_____

[5/]For the Court's ease of reference, a copy of Logan's exhibit list is attached hereto as Exhibit ____, and a copy of Defendants' exhibit list is attached hereto as Exhibit ____ . (At the Court's request, additional copies of Logan's exhibits can be made by contacting Plaintiff's counsel.) In addition, a copy of the "Transcript of Proceedings - Preliminary Injunction Hearing Before the Honorable Michael T. Mason," along with a Notice of Filing of same, is submitted herewith.

Compact" mat-cutting system, the "#401 Intermediate" mat-cutting system, and Logan's straight-edge and bevel-edge cutting tools, are characterized by Logan's distinctive non-functional design features. Indeed, Logan's trade dress associated with these products has remained essentially unchanged for several years, and, as a result, its products have derived a unique and distinctive identity. (See Transcript, pp. 66, 129-129; Plaintiff's Exhibit Nos. 16 and 17.)

Logan has devoted considerable time, effort and resources to its ongoing efforts to research, develop, market and promote the Logan brand and its high-quality products, and as a result, Logan has become a leader in the highly-competitive art materials market. Indeed, Logan has spent hundreds of thousands of dollars over the course of the last decade, alone, in advertising, marketing and promoting its products, which now are advertised to the public on television, as well as in print and online promotion materials. In addition, Logan has actively marketed and promoted its products utilizing an extensive sales force throughout the United States and around the world. For several years, Logan has exhibited and promoted its products at essentially every major national and international art materials trade show. (*See e.g.,* Transcript, pp. 28, 30-50.)

## II.   Defendants' Efforts To Copy Logan's Trade Dress

Without Logan's authorization, approval or knowledge, Defendants--who, until only recently were unknown in the mat cutting equipment market--have embarked upon a nationwide campaign to compete with Plaintiff. (*See* Transcript, pp. 20-26, 140-141, 210-211.) Defendants have become involved in promoting and attempting to sell mat cutting tools which, upon initial inspection, appear to be virtually identical to Logan's popular "#301 Compact" and "#401 Intermediate" mat-cutting systems and related equipment, such as Logan's straight-edge and bevel-

5

edge cutting tools. (*See* Plaintiff's Exhibit Nos. 4-5; 6-10, 18-23).   As set forth in Logan's Complaint and outlined in the testimony submitted by the parties' at the hearing, Defendants have been contacting Plaintiff's dealers and distributors in an effort to market and sell Defendants' "Home Pro" and "Studio Pro" mat cutting tools, claiming that these products are "exact" copies of Logan's "#301 Compact" and "#401 Intermediate," respectively.   Indeed, Defendants have copied virtually every cosmetic design aspect of the "#301 Compact", the "#401 Intermediate", and related cutting tools manufactured and sold in conjunction with these mat cutting systems. For example, substantial similarities between the products include, but are not limited to, the following:

- Defendants' boards are the same color, size, and material (vinyl laminate) as Plaintiff's boards;

- Defendants' straight-edge and bevel-edge cutting tool uses the exact color scheme (silver and black) used by Plaintiff;

- Defendants' straight-edge cutting tool has the same overall appearance as Logan's straight-edge cutting tool, due, primarily to the fact that, among other things, Defendants' tool incorporates the same color scheme, shape and dimensions as Logan's tool, and, perhaps most notably, Defendants' use a "bike handle" grip design as part of the tool, which is a unique and arbitary design feature used only by Logan for decades;

- Defendants' bevel-edge cutting tool also utilizes identical shape and design features as those which comprise Logan's trade dress, notwithstanding the fact that Logan has, for years, offered a bevel-edge cutting tool with extrusions which have an original, distinctive shape;

- The rail and hinges on Defendants' straight edge bars are identical in color, shape and style to Plaintiff's straight edge bars, and Defendants have placed adhesive labels (which are the same color as Plaintiff's labels) on the straight edge bar in the same place that Plaintiff's appear;

- The measurement scales that appear on Defendants' tools incorporate the same color, font and style as Logan's measurement scales;

6

- Defendants' adjustable mat rail guide appears to be identical in every respect to Plaintiff's (*i.e.*, the same color, stickers placed in the same location, and screws which are virtually the same color and size as those used by Plaintiff); and

- While Logan's "#301 Compact" mat cutting board arbitrarily features a tension spring mat guide rather than a hinge, Logan's "#401 Intermediate" board happens to feature a hinge. At the same time, Defendants' "Home Pro"(designed to compete with Logan's "#301 Compact") features a tension spring mat guide, while Defendants' "Studio Pro" (designed to compete with Logan's "#401 Intermediate") includes a hinge.

(*See e.g.*, Plaintiff's Exhibit Nos. 4-5; 6-10, 18-23).

Defendants have copied Logan's unique and non-functional design elements and incorporated them into their products in such a way as to create the same overall commercial impression as Logan's trade dress.[6] By so closely duplicating the appearance of Logan's design and trade dress, a reasonable purchaser, after an initial inspection, could easily conclude that Defendants' products are the same as, or in some way related to, Logan's products. Indeed, as set forth in the sworn affidavits presented at the hearing, there have been instances of actual confusion involving individuals who, for years, have been professionally involved in the mat cutting industry. (*See* Plaintiff's Exhibit Nos. 4 and 5.)

## III. Logan's Complaint

Upon learning of Defendants' efforts to market and sell "knock-off" versions of Logan's best-selling tools, Logan sent a letter to Defendants' counsel, requesting that Textus cease and desist from any further infringing conduct. (A copy of Logan's letter is attached hereto as Exhibit

---

[6]Importantly, in paragraph 10 of their Answer to the Complaint, Defendants admit that Textus has included the "same" or "similar" features on its products as those which comprise Logan's trade dress.

5.)   However, when Defendants refused to remove the infringing features from their products,

Logan initiated litigation by filing a Complaint alleging causes of action under the Lanham Act

for trade dress infringement (Count I) and false advertising (Count II), as well as related claims

for deceptive trade practices (Count III) and unfair competition (Count IV). (A copy of Logan's

Complaint is attached hereto as Exhibit 6.)  In response to the Complaint, Defendants have filed

an Answer, Affirmative Defenses and Counterclaim. (A copy of Defendants' pleading is attached

hereto as Exhibit 7)[2/]  Importantly, in this pleading, Defendants ultimately admit, among other

things, that Logan "has become the leader, in terms of sales, in the mat cutting materials market";

that Textus copied various design features of Logan's mat cutting tools; that Textus has initiated

a marketing effort to compete with Plaintiff by selling mat cutting tools (including its "Home Pro"

and "Studio Pro") which are similar to Logan's "#301 Compact" and "#401 Intermediate"; that

"Textus intended (and intends) to offer products comparable to those of Logan at a competitive

price"; and that Textus has only begun to enter this particular market.  (*See* Answer, pp. 3 - 4,

9, 11 -13.)

## ARGUMENT

## I.    Preliminary Injunction Standards

Under Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a preliminary

injunction must first demonstrate the following:  "(1) some likelihood of succeeding on the merits;

---

[2/]The Counterclaim filed by Textus is not at issue at this time and has no bearing on the Motion currently before the Court.  However, the Court should note that on May 17, 2002, Logan filed a Motion to Dismiss the Counterclaim.  After obtaining several extensions of time, Textus ultimately filed a response on September 3, 2002.  On November 7, 2002, the District Court (Judge Paul E. Plunkett) entered an order which, among other things, granted, in part and denied in part Logan's motion with respect to the defamation claim, and granted Logan's motion with respect to the unfair competition claim.

[and] (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Pride Communications Ltd. v. WCKG, Inc.*, 851 F. Supp. 895, 900 (N.D. Ill. 1994) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Where these threshold tests are met, the court must then consider the "(3) irreparable harm to the non-moving party if preliminary relief is granted, 'balancing that harm against the irreparable harm to the moving party if relief is denied;' and (4) the interests of the public." *Id.*

Because Logan can satisfy each of the above elements, the Court should grant Logan's Motion and enter an order enjoining Defendants from manufacturing, selling, marketing, promoting, or in any way offering for sale, any products which incorporate the distinctive design features which combine to create Logan's valuable trade dress.

## II.    Logan Is Likely To Prevail On The Merits Of Its Claims

As set forth more fully in Logan's Memorandum in Support of it Motion for Preliminary Injunction, in order to obtain a preliminary injunction, Logan must first demonstrate "some likelihood of success on the merits." *Motorola, Inc. v. DBTEL, Inc.*, No. 02 C 3336, 2002 WL 1610982, at *15 (N.D. Ill. July 22, 2002)(Mason, M.). The Seventh Circuit has defined a "reasonable likelihood" to mean that a party's chances of prevailing are "better than negligible." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). The more heavily the balance of harm weighs in the moving party's favor, the less the degree of likelihood of succeeding on the merits the moving party must show. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-898 (7th Cir. 2001)(affirming preliminary injunction in trademark infringement action based upon "the similarity of the marks, the intent of the defendant, and evidence of actual confusion.") For the reasons set forth herein, and in Logan's Motion for Preliminary Injunction and Memorandum, and

9

based upon the evidentiary support provided by the affidavits attached to its Memorandum and the live testimony and exhibits presented at the hearing on its Motion, Logan has more than met this and the other threshold requirements for injunctive relief.

### A. Logan Is Likely To Prevail On Its Claim For Trade Dress Infringement

The Seventh Circuit has explained that "trade dress" is a term of art used in connection with a product's overall image, including elements such as its size, shape, color, and graphics, and that it receives protection against infringement under § 43(a)(1) of the Lanham Act. *See Abbott Labs.*, 971 F.2d at 20. *See also* Thomas McCarthy, 1 "McCarthy on Trademarks and Unfair Competition" at 8-8 (3d ed. 1994)("While 'trade dress' traditionally referred to packaging and labeling of a product, the term has now been stretched to include the shape and design of the product itself.")

To prevail on a claim for trade dress infringement, a plaintiff must demonstrate that: (1) its "overall image" is inherently distinctive or has acquired distinctiveness through secondary meaning; and (2) the similarity of the defendant's trade dress causes a likelihood of confusion on the source or affiliation of the product. *See Abbott Labs*, 971 F.2d at 20; *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 380 (7th Cir. 1996). However, even if the plaintiff successfully establishes these elements, the defendant can raise "functionality" as an affirmative defense, although the defendant bears the burden of proof in establishing that the trade dress is, indeed, functional. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998); *Abbott Labs.*, 971 F.2d at 20.

### 1. Logan's Trade Dress is Distinctive

The distinctiveness of Logan's trade dress arises not from the isolated functional components. Instead, Logan's trade dress consists of a myriad of non-functional elements which are arbitrary and ornamental. The "overall image" created by the combination of these features is what has, for years,

10

distinguished Logan's products from every other mat-cutting tools on the market. Logan has clearly proven that it has a "better than negligible" chance of prevailing on its claim of distinctiveness. *See Abbott*, 971 F.2d at 20.

For decades, Logan has incorporated the non-functional design features described above, which include, but are not limited to, the use of vinyl laminate, the shape of the extrusions on Logan's cutting board, the size and shape of the board itself, and the color scheme chosen by Logan. These features and others combine to create a unique appearance that distinguishes Logan's mat-cutting tools from those of the other manufacturers in this industry. Logan can show that these features are non-functional, arbitrary and ornamental. The affidavit upon which Defendants rely states, incredibly, that mat-cutters "all roughly look the same..." (Hill Affidavit, ¶ 5.) Examination of examples of a other mat-cutting tools and accessories which are sold competitively in this market show that this statement simply is not true.[9]

Although Logan's trade dress is inherently distinctive, it has, alternatively, accquired distinctiveness through "secondary meaning." Secondary meaning exists when the consuming public associates the trade dress with a single source. *See Reed-Union Corp. v. Turtle Wax, Inc.* 869 F. Supp. 1304, 1308 (N.D. Ill. 1994). Logan's trade dress acquired secondary meaning because Logan used a unique, non-functional design for decades. *See Celex Group Inc. v Executive Gallery, Inc.*, 877 F. Supp. 1114, 1139 (N.D. Ill 1995). The affidavits submitted by Logan illustrate that ultimate consumers and dealers of mat cutting equipment associate the unique combination of color, shape, size, and overall image with one manufacturer, Logan. (*See* Plaintiff's Exhibit Nos. 4 and 5.) In

---

[9] At the hearing on November 12, 2002, Logan identified and presented representative samples of products (straight and bevel-edge cutting tools) manufactured by its competitors (other than Textus), including Alto, C&H, Dexter, Fletcher, Maped and Frame Co. (*See* Transcript, pp. 59-72, 81.)

addition, Sam Albright, an executive the industry with decades of experience, and a competitor of Logan, has stated that customers associate Logan's trade dress with the high quality of Logan's products. (*See* Plaintiff Exhibit No. 5.)

Even if the Court were to conclude at this point in the case that Logan does not have a "better than negligible" chance of establishing at trial that its trade dress is inherently distinctive, it is clear that Logan's trade dress has acquired distinctiveness through "secondary meaning." Secondary meaning exists when the consuming public associates the trade dress with a single source. *See Reed-Union Corp. v. Turtle Wax, Inc.* 869 F. Supp. 1304, 1308 (N.D. Ill. 1994). In considering the distinctiveness of Logan's trade dress under a "secondary meaning" analysis, it is clear that members of the relevant buyer class (comprised of ultimate consumers and dealers of mat cutting equipment) associate the unique color scheme, shape, size and overall image of Logan's trade dress with a single manufacturer--Logan. (*See* Plaintiff's Exhibit Nos. 4 and 5.) Logan's trade dress acquired secondary meaning as a result of the continuous and exclusive use of unique, non-functional design features in connection with two of its most popular cutting systems, the "#301 Compact" and the "#401 Intermediate" (and related mat cutting tools). In addition, this secondary meaning was derived from Logan's extensive promotion, advertising and sales of these products over the past decades. *See Celex*, 138 F.3d at 295 ("Under the Lanham Act, five years' use weighs strongly in favor of secondary meaning.") (citing 15 U.S.C. § 1052(f) (West 2002) (trademark commissioner may accept five years' exclusive and continuous use of a mark as *prima facie* evidence of secondary meaning)).

### 2. There Is A Strong "Likelihood Of Confusion"

Although evidence of actual confusion is only one of several factors which are used by the Seventh Circuit to evaluate the likelihood of confusion, it is often considered to be one of the most

12

compelling. *See Thomas & Betts*, 138 F.3d at 297 (in considering whether a "likelihood of confusion" exists with respect to the trade dress of two competing products, "evidence of actual confusion, where it exists, is entitled to substantial weight.")   In addition to evidence of actual confusion, the list of relevant factors includes:  (1) similarity of the trade dresses; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's trade dress; (6) intent of the defendant to pass off his product as that of another. *See Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1234-35 (N.D. Ill. 1996) (citing *Forum Corp. of N. Am. v. Forum Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990)).   While the weight accorded to each of the above factors varies from case to case, this Court has recognized that "[t]hree of these factors in the likelihood of confusion analysis are generally considered the most important-- the intent of the alleged infringer, evidence of actual confusion, and the similarity of trade dress." *Reed-Union*, 869 F. Supp. at 1314.

Consideration of these key factors, along with others considered within this Circuit, indicates that there is a strong "likelihood" that Defendants' actions, if unabated, will continue to cause confusion on the part of consumers as to the source or affiliation of Defendants' products. *See Abbott Labs.*, 971 F.2d at 22, n.7 (rejecting as "without merit" the defendant's argument that plaintiff had failed to establish a likelihood of confusion where the district court had determined that the parties' products were "virtually identical").

In addition to the evidence of actual confusion, consideration of the similarities between the parties' trade dresses and products, and the area and manner of concurrent use, only further tilts the scale in Plaintiff's favor and supports a finding of a likelihood of confusion. The parties' respective products are identical, as the Textus "Home Pro" and "Studio Pro" mat cutting tools appear to be

13

"knock-off" versions of Logan's "#301 Compact" and "#401 Intermediate", respectively, and Textus offers the same line of "accessory" tools (*e.g.*, a straight-edge cutting tool) which Logan offers in connection with its "#301 Compact" and "#401 Intermediate". Furthermore, the parties directly compete with each other in the art, craft, and hobby industry, as is demonstrated by Defendant's attendance at major industry trade shows, and their efforts to contact and sell mat cutting tools to the same dealers which have been doing business with Logan for years. Therefore, the trade dress in question is being used on directly competitive products sold through the same channels of trade. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 377 (7th Cir.) (holding that when the marks and trade dress in question are used on directly competitive products sold through the same channels of trade, less similarity is required between the marks to establish confusion.) Indeed, Textus has copied virtually every non-functional aspect of Logan's best-selling tools, resulting in not only a likelihood of confusion, but actual confusion. (*See* Plaintiff's Exhibit Nos. 4 and 5.)

Furthermore, the strength of Logan's trade dress and Defendants' wrongful intent in copying the key features of Logan's trade dress, weigh in Logan's favor. It is clear from the testimony and the admissions made by Defendants in their pleadings that in entering this market, Defendants knew of and knowingly copied Logan's trade dress in order to profit upon the goodwill and widespread recognition associated with the Logan brand and its quality tools. In so doing, Defendants have willfully sought to confuse the public. Defendant's intent to cause and profit from such confusion is evidenced by the fact that Defendants--admittedly--copied Logan's tools in every visible respect, including Logan's trade dress. *See Reed-Union*, 869 F. Supp. at 1313 ("[I]ntent can be inferred when the defendant, with knowledge of plaintiff's trade dress, adopts a similar trade dress.")

14

**B.**   **Defendants' Arguments Are Not Supported By The Facts Or Prevailing Law**

In opposing Logan's Motion, Defendants rely almost exclusively on a contorted interpretation

of the ruling in *Traffix Device, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001),

arguing that this decision essentially precludes a claim for trade dress protection with respect to *any*

feature of *any* product which once was the subject of a utility patent.  Specifically, Defendants claim

that *Traffix* supports the position that a party's competitors are free to copy any and all features of

"a product (cumulatively and as viewed in its component parts) for which [that party] obtained patent

protection."  (See Defendants' Response to Motion for Preliminary Injunction ("Response"), p. 4.)

However, Defendants' position blatantly misrepresents the holding in *Traffix* and completely

disregards prevailing Seventh Circuit authority. *See, e.g., Thomas & Betts*, 138 F.3d 277 (7th Cir.

1998).

In a misguided attempt to align the facts of this case with those at issue in *Traffix*, Defendants

also present a distorted view of (1) the nature and scope of Logan's trade dress, and (2) the expired

utility patents which purportedly form the basis for Defendants' opposition.  Specifically, Defendants

claim that "the products...on which Plaintiff bases its trade dress and related claims, were previously

protected by patent," and the "fact that these products are off-patent explains why Textus was and

is free to compete as it has."  (Response, p. 4.)  Defendants then proceed to erroneously reference

two expired utility patents, which, in contrast to the situation in *Traffix*, do not "claim" or in any

way implicate the specific combination of design features for which Logan seeks trade dress

protection in this case.  (Copies of U.S. Patent Nos. 3,996,827, and 4,158,977, were submitted as

Exhibits at the evidentiary hearing as Plaintiff's Exhibit Nos. 12 and 13, respectively.)  Indeed, none

of the trade dress features specified in Logan's Complaint or moving papers are covered by, or

15

mentioned in, the claims of these expired patents. (*See* Transcript, pp. 132-137; Plaintiff's Exhibit Nos. 12 and 13.) Moreover, one of the patents identified by Defendants, U.S. Patent No. 3,996,827, relates to a product that is not at issue in this litigation (*See* Transcript, pp. 135-137.)

### 1. The *TrafFix* Decision

In *Traffix*, the Supreme Court ostensibly sought to resolve a conflict between the circuits (noting the distinction between the rules followed by the Seventh and Federal Circuits, and the Tenth Circuit) as to whether mere disclosure of a product feature in an expired patent automatically precludes trade dress protection for that feature. However, the Supreme Court did not in fact resolve that conflict: "We need not resolve this question. If, despite the rule that a case arises in which trade dress becomes the practical equivalent of an expired utility patent, that will be time enough to consider the matter." *Id.* at 1263. *See McCarthy on Trademarks*, § 6.10 (2001)("Thus, while the Supreme Court left the issue open, the message between the lines is that the functionality rule is an adequate safeguard to ensure that there is no conflict between patents and trade dress."). Ultimately, the Supreme Court's holding in *Traffix* left untouched the rule of this circuit, as articulated in *Thomas & Betts*, that trade dress is protectable where non-functional, even if it is composed of features claimed in an expired patent.

In *Traffix*, the plaintiff held two patents for a "dual-spring design" mechanism used to keep outdoor signs upright despite adverse wind conditions. *See Traffix*, 532 U.S. at 26, 121 S.Ct. at 1257. When these patents expired, the defendant copied the mechanism and sold what was essentially a copy of the plaintiff's sign. *Id.* The plaintiff brought suit against the defendant, claiming that *the dual-spring design, in and of itself*, was subject to trade dress protection under the

16

Lanham Act. *Id.* at 1257 ("the one element of [plaintiff's] trade dress at issue was the dual-spring design").

In its decision, the Court stated that "[a] utility patent is strong evidence that the features therein claimed are functional," and that "[w]here the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 1260. The Court then placed this burden of proof on the plaintiff, focusing on the fact that "[i]n the case before us, the central advance claimed in the expired utility patents...is the dual-spring design; and the dual-spring design is the essential feature of the trade dress [plaintiff] now seeks to establish and to protect." *Id.* In so doing, the Court relied on the fact that the plaintiff did not seek protection for decorative visual elements, but instead sought trade dress protection for nothing more than the very same design which had been expressly claimed in and protected by the expired utility patents. *Id.* at 1262 ("The asserted trade dress consists simply of the dual-spring design, four legs, a base, an upright, and a sign."). Importantly, the Court distinguished the facts in *Traffix* from "a case where a manufacturer seeks to protect arbitrary or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs..." *Id.* (noting that "[t]here the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent.").

## 2.    Defendants Mischaraterize Logan's Expired Patents

As mentioned previously, the tool identified in U.S. Patent No. 3,996,827, is not one of the products at issue in this case. (*See* Transcript, pp. 135-137;    Plaintiff's Exhibit No. 12.) Furthermore, although the patent identified as Plaintiff's Exhibit No. 13 at the hearing claims

17

protection for the functional features of a mat cutting tool, it does not claim protection for any of the elements of Logan's trade dress which Defendants have copied. (*See* Plaintiff's Exhibit No. 13.) While the patent makes mention of the functionalities derived from a ruler, a tension spring and an "anti-crawl pin," only the operational qualities of these parts are referenced.    Nowhere in the expired patent does Logan claim protection for the other arbitrary and ornamental features identified in this case as Logan's trade dress. (*See* Logan's Motion, pp. 4-5; Transcript, pp. 132-135.)

In their Response, Defendants essentially argue that because Logan once received patent protection for the functional design components claimed in a patent covering one of its mat cutting tools, Logan now is precluded from obtaining trade dress protection for the distinctive, non-functional design features of this tool and other products included with its "#301 Compact" and "#401 Intermediate" mat cutting systems.    However, Defendants' position is not supported by the *Traffix* decision, and it is clearly inapposite to the law of this Circuit. *See Thomas & Betts*, 138 F.3d at 288 (holding that a patent for a two-piece cable did not bar trade dress protection for the shape of the tie).

### 3.    Logan's Trade Dress Is Non-Functional

Although Defendants attempt to characterize certain of the individual design features comprising Logan's trade dress as "functional," they present no rational basis for concluding that Defendants, or, for that matter, any of Logan's competitors, would find any of the elements of Logan's trade dress "*necessary* to incorporate into their product in order to compete effectively." *See Sara Lee Corp. v. Am. Leather Products, Inc.*, No. 97 C 4158, 1998 WL 433764 (July 29, 1998, N.D. Ill.) In addition, Defendants' analysis of "functionality" is wholly inconclusive, as Defendants fails to consider "the overall appearance of the product in order to determine whether the total

18

combination and arrangement of features is entitled to protection." *Id.* at 14. Furthermore, Defendants present no rational basis whatsoever for concluding that any one of the design features are *essential* for the functionality of its tools.

It is the law of this Circuit that once Logan satisfies the elements of a claim for trade dress infringement, the burden is on Defendants to show that the trade dress is indeed functional. *See Thomas & Betts*, 138 F.3d at 291.[2] However, Defendants have not, as indeed they cannot, sustain that burden, because Logan's trade dress is entirely non-functional. Defendants ignore completely the distinction between the functional elements of Logan's mat-cutting tools and the non-functional nature of Logan's trade dress. (*See* Transcript, pp. 80 - 89.) As set forth in Logan's previously-filed Memorandum, a specific trade dress is functional if it would be costly to design around or to omit. In this context, "costly" means that the change would "adversely effect a competitor's ability to produce and market a product of comparable price and quality." *See Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir. 1992) (citation omitted). In short, the feature must be *necessary* to be competitor's ability to compete. *See Thomas & Betts*, 138 F.3d at 297.

The evidence establishes that Logan's trade dress--which consists of features such as color, shape and size-- is quite easy to design around. (*See* Transcript, pp. 80-89.) The various manufacturers of mat-cutting tools have, for years used different colors, shapes, and materials for their products, which they produce in a range of different sizes. Use of Logan's trade dress is clearly not necessary for the other manufacturers to compete. Indeed, the sworn testimony, exhibits and

---

[2]Indeed, because Logan's expired utility patents do not claim protection for the distinctive design features comprising Logan's trade dress, the facts in this case are distinguishable from those in *Traffix*, and Logan is not required to "carry the heavy burden of showing that the feature is not functional." *See Traffix*, 121 S.Ct. at 1260.

19

sworn affidavits presented at this point in the case show that alternative designs are, in fact, competitive in this industry.

Defendants' assertions regarding the functional nature of Logan's trade dress are anything but compelling. For example, Defendants assert that Logan's selection of the color black is not arbitrary, but functional, to provide contrast to the "undersides and insides" of "[t]he mats to be cut...". (*See* Response, at 10.) However, this argument completely misconstrues the concept of "functionality," as defined by the Seventh Circuit. In this Circuit, a "feature is functional if it is one that is costly to design around or to do without...." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989).

Defendants' argument, however, misrepresents the mat cutting process, itself, and the fact that mat paper is available in many colors, including dark colors for which black provides no contrast, even assuming this were essential to the functionality of the product. Further, competitors of Logan's have selected colors other than black for their boards, and a black board is not necessary for the functionality or competitiveness of the product. (*See* Transcript, pp. 80-89.) Finally, Defendants provide no evidence to support their assertion that the choice of a different color scheme would adversely affect their ability to produce a mat-cutting board of comparable price and quality. *See Abbott Labs*, 971 F.2d at 20. In fact, even the affidavit which Defendants attach to their Response states without qualification that the boards are often *not* black. (*See* Affidavit of Michael T. Hill, attached to Defendants' Response ("Hill Affidavit")). *See also Thomas & Betts*, 138 F.3d at 197 ("The fact that the feature at issue serves *some* function is not enough; to be functional in the trade dress sense, the feature must be "necessary to afford a competitor the means to compete effectively.")(emphasis added).

20

Unlike the plaintiff in *Traffix*, Logan does not seek to claim trade dress protection for a functional feature it claimed in an expired patent. Rather, Logan seeks trade dress protection for visual, ornamental and arbitrary features of its mat cutting systems which were not identified or in any way protected by its now-expired patents. Indeed, "even if Logan were required under the facts of this case to bear the "heavy burden" of proving that its trade dress is non-functional, it certainly has done so. ( *See* Transcript, pp. 80-89.)

**C.  Logan Is Likely To Prevail On Its State Law Claims**

While Logan relies primarily upon its claim for trade dress infringement as the basis for its Motion for Preliminary Injunction, Logan submits that for the reasons set forth in its earlier Memorandum, and based upon the evidence submitted in this case, it also has a "better than negligible chance" of prevailing on its claims for false advertising, unfair competition and deceptive trade practices.

**III.  Logan Has No Adequate Remedy At Law And, Accordingly, Will Suffer Irreparable Harm In The Absence Of Injunctive Relief**

The Seventh Circuit has long recognized that "the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). In addition, iIt is well established in the Seventh Circuit, that in cases involving trademark infringement, "the court may presume that irreparable injury will result where there is a likelihood of proving consumer confusion." *Pride Communications*, 851 F. Supp. at 903. Thus, for the reasons set forth above, Logan can easily establish this element entitling it to preliminary injunctive relief as a matter of law.

21

Logan will suffer irreparable harm in the absence of preliminary injunctive relief, because, it has no authority or control over the quality of Defendant's goods, and, in fact, those goods are substandard in Logan's eyes. Thus, in the eyes of the public, Defendant's goods reflect negatively on Logan, resulting in irreparable harm to Logan's goodwill and its reputation for quality products. Because Logan is without an adequate remedy at law to stop Defendants' wrongful conduct, a preliminary injunction order is wholly appropriate and warranted. *See Consumer Sales & Mktg., Inc. v. Digital Equip. Corp.*, No. 95 C 5049, 1995 WL 548765, at * 4 (N.D. Ill. Sept. 13, 1995) ("[C]ase law in this jurisdiction holds that the damage to goodwill is not readily calculable. . . . Loss of goodwill or business reputation are recognized by courts in Illinois to be injuries for which money damages are inadequate.").

## IV. The Balance Of Harms Weighs Heavily In Logan's Favor

The "balancing of harms" requires a comparison between the harm that Logan would suffer from the wrongful denial of the requested relief and the harm that Defendants would suffer if the relief is granted. However, because Logan is highly likely to succeed on the merits of its claims, as demonstrated above, Logan should only need to show that this balance of harms tips slightly in its favor. *See Consumer Sales*, 1995 WL 548765, at *7 ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.").

Logan can easily make such showing, as its business is entirely comprised of the manufacture, promotion, and sale of mat cutters and mat cutter accessories, and the "#301 Compact" and "#401 Intermediate" are two of its best-selling and most profitable products. In contrast, Textus is a new-comer to this market, as its business has focused primarily on the import and export of

22

textile products. Furthermore, notwithstanding Defendants' efforts to market "knock-off" tools and thereby compete with Logan, Logan has seen no evidence to indicate that Textus has any significant outstanding orders for its tools. In fact, Textus has admitted that it does not have a significant inventory of products produced today, and that until only recently, it had not produced anything more than prototype tools. Accordingly, the balance of hardships favors Logan.

## V.    The Injunctive Relief That Logan Seeks Will Not Harm The Public's Interest

Logan need only show that its requested injunctive relief will not harm the public's interest. However, Logan can show much more -- namely, that granting the relief it seeks will significantly benefit the public's interest, while denying such relief would pose significant harm to the public. Granting Logan's requested relief will allow the public to be free from confusion as to the source and quality of Defendants' products. However, if Textus is permitted to continue promoting, marketing and selling mat cutters to the public using Logan's trade dress and representing that its tools are the equivalent of Logan's, the public may mistakenly purchase the "knock-off" products believing that they are of the high quality associated with Logan. *See, e.g.*, *Cal City*, 1994 WL 114859, at *1-2 (noting that "[t]he public's interest in avoiding consumer confusion and maintaining quality control standards also weighs in [the manufacturer's] favor" and that "[t]he resulting harm to consumer confidence in [the manufacturer's] name if production processes are not adhered to [by the distributor] is not quantifiable or reparable").

## CONCLUSION

In response to Plaintiff's Motion, Defendants present nothing more than a contrived effort to obfuscate the paramount goal of trademark law in this country: to protect the public from confusion. Defendants' bald claims of patent preemption fail when the expired patents are examined

23

consistent with prevailing Seventh Circuit. precedent. *See Thomas & Betts,* 138 F.3d at 288 (the

mere disclosure of a product feature in the specification of an expired patent does not automatically

preclude trade dress protection to that feature, and holding "that there is no per se prohibition against

the features disclosed in a patent receiving trademark protection after the patent has expired.") *See*

*also 1 J. Thomas McCarthy,* <u>McCarthy on Trademarks</u> § 6.12 (4th ed. 1996)("[T]here is no direct

causal relationship between expiration of a patent on a product and the legal protectability of a

trademark on that product."). To argue that the ruling in *Traffix* obliterates trade dress protection

for arbitrary, ornamental and/or otherwise non-functional design features, is a blatant misstatement

of the holding in that case. *See Traffix,* 532 U.S. 23, 121 S.Ct. 1255 (refusing to overrule the law

of this Circuit as set forth in *Thomas & Betts* and rejecting the proposition that non-functional

features in a utility patent can never be the subject of trade dress.) In this case, the *arbitary and*

*ornamental elements* of Logan's trade dress have never been claimed in or in any way covered by

a patent. Furthermore, for the reasons set forth herein and in Logan's initial Memorandum, the trade

dress at issue in this case is not "functional," as that term is defined in this Circuit. *See e.g., Thomas*

*& Betts,* 138 F.3d at 297.[10]

The situation before the Court is simple: Defendants are attempting to manufacture, market,

sell and import mat cutting tools which present the same overall image and appearance as Logan's

"301 Compact" and "401 Intermediate," with the intent to pass them off as the same as or

substantially similar to Logan's best-selling tools. If Defendants actions continue unabated, the

---

[10] Again, Defendants completely ignore the fact that for years, mat cutting manufacturers in this
highly competitive industry have used different colors, shapes and materials in designing mat cutting
tools of varying sizes. (*See* Plaintiff's Exhibit No. 5.) This uncontested fact confirms that alternative
designs are not only possible, but that they can, and do, remain competitive in the marketplace. *See*
*Abbott Labs,* 971 F.2d at 20; *Thomas & Betts,* 138 F.3d at 297.

confusion which has already occurred in the marketplace will proliferate, and Logan will suffer irreparable harm that outweighs any harm Defendants-- newcomers to this market with minimal, if any, investment at this point--could possibly suffer if their illegal activities were enjoined. Accordingly, this Court should grant Logan's Motion for Preliminary Injunction.

Dated: December 6, 2002                       Respectfully submitted,

                                              David Forth

                                              One of the Attorneys for Plaintiff,
Kristin J. Achterhof (No. 06206476)           LOGAN GRAPHIC PRODUCTS, INC.
Floyd A. Mandell (No. 01747681)
H. David Roseth (No. 06275806)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, Illinois 60661-3693
Phone (312) 902-5200

25

## CERTIFICATE OF SERVICE

I, H. David Roseth, an attorney, hereby certify that I have caused copies of the foregoing

Notice of Filing and Plaintiff's Memorandum of Points and Authorities in Support of Motion for

Preliminary Injunction to be served upon:

> Christopher A. Nichols, Esq.
> HUSCH & EPPENBERGER, LLC
> 401 Main Street, Suite 1400
> Peoria, Illinois 61602
>
> Susan Somers Neal, Esq.
> Kevin J. McDevitt, Esq.
> NEAL & McDEVITT
> 1603 Orrington Avenue
> Suite 2000
> Evanston, Illinois 60201
>
> Lee J. Schoen, Esq.
> SCHOEN MANGAN & SMITH, LTD.
> 200 West Adams Street
> Suite 1005
> Chicago, Illinois 60606

*via* facsimile and by U.S. Mail, postage prepaid, on this 6th day of December, 2002.

_____
H. David Roseth

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN GRAPHIC PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 1823 |
| | ) | |
| v. | ) | |
| | ) | Judge Plunkett |
| TEXTUS USA, INC. (*d/b/a* Textus Industries, | ) | |
| Inc. *and* Textus Art & Craft) and | ) | |
| DAVID SMITH, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

## HEARING ON MOTION FOR PRELIMINARY INJUNCTION
## PLAINTIFF LOGAN GRAPHIC PRODUCTS, INC.'S EXHIBITS

1.   Letter dated January 24, 2002 from Kristin J. Achterhof to Robert E. Muir.

2.   Plaintiff Logan Graphic Product, Inc.'s Complaint.

3.   Defendants' Answer, Affirmative Defenses and Counterclaim.

4.   Affidavit of Brent Land.

5.   Affidavit of Sam Albright.

6.   Sell sheet – Logan #301 Compact Mat Cutter.

7.   Sell sheet – Logan #401 Intermediate Mat Cutter.

8.   Sell sheet – Textus Home Pro Mat Cutter.

9.   Sell sheet – Textus Studio Pro Mat Cutter.

10.   Sell sheet – Textus Accessories.

11.   Logan Catalog.

12.   Logan Patent No. 3,996,827.

13.     Logan Patent No. 4,158,977.

14.     Screen Images of Artpurveyor.com.

15.     Logan's Products as Displayed in the Blick Studio Catalog.

16.     Photograph of Bevel-Edge Cutting Tools.

17.     Photograph of Bevel-Edge Cutting Tools, Alternate View.

18.     Photograph of Logan's and Textus' Bevel-Edge Cutting Tools.

19.     Photograph of Logan's and Textus' Bevel-Edge Cutting Tools, 1st Alternate View.

20.     Photograph of Logan's and Textus' Bevel-Edge Cutting Tools, 2nd Alternate View.

21.     Photograph of Logan's and Textus' Bevel-Edge Cutting Tools, 3rd Alternate View.

22.     Photograph of Logan's and Textus' Bevel-Edge Cutting Tools, 4th Alternate View.

23.     Photograph of Logan's #401 Intermediate and Textus' Studio Pro Mat Cutting Tools.

24.     E-mail Dated January 22, 2002 from Norma Walker to Jan Grimstad.

25.     Group Exhibit – Industry Catalogs.

26.     One Typical Catalog.

27.     Blick Studio Holiday 2002 Catalog.

28.     Logan #301 Compact Mat Cutting Tool.

29.     Logan #401 Intermediate Mat Cutting Tool.

30.     Textus Home Pro Mat Cutting Tool.

31.     Textus Studio Pro Mat Cutting Tool.

32.     Logan Push-Type Cutter.

33.     Logan Model 702 Bevel-Edge Cutter.

34.     Textus Large Bevel-Edge Cutter.

35.     Textus Small Bevel-Edge Cutter.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOGAN GRAPHIC PRODUCTS, INC.,          )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )     Case No. 02 C 1823
                                       )
TEXTUS USA, INC. (d/b/a TEXTUS         )     Judge Paul E. Plunkett
INDUSTRIES, INC. and TEXTUS ART        )
AND CRAFT), and DAVID SMITH,           )     Magistrate Judge Michael T. Mason
                                       )
                Defendants.            )

## LIST OF DEFENDANTS' EXHIBITS INTRODUCED
## AT THE PRELIMINARY INJUNCTION HEARING ON NOVEMBER 12, 2002

Exhibit A:    January 18, 2002 memo from Logan Graphics Products, by Brian Buell, with fax
              transmission information – offered for impeachment/demonstrative purposes.

Exhibit B:    U.S. Patent No. 4,158,977

Exhibit C:    U.S. Patent No. 3,996, 827

Exhibit D:    Picture of rail on Textus Board depicting Textus™ Art and Craft label

Exhibit E:    Picture of Studio Pro™ Double Cutter depicting Textus™ Art and Craft label

Exhibit F:    Picture of Studio Pro™ Straight Edge Cutter depicting Textus™ Art and Craft
              label

Exhibit G:    Picture of Home Pro™ rail depicting Textus™ Art and Craft label

Exhibit H:    Picture of Home Pro™ product – full shot

Exhibit N:    Picture of Home Pro™ product depicting cutter, rail and replacement blades with
              Textus ™ Art and Craft label

<u>Demonstrative Exhibits Used in Open Court</u>

Home Pro™ inbox – current production model

Studio Pro™ inbox – current production model

Home Pro™ inbox with packaging attached

Affidavit of Michael Hill in Support of Defendants' Response to Motion for Preliminary Injunction

Respectfully Submitted,

TEXTUS INDUSTRIES, INC. and
DAVID SMITH, Defendants

By: _____
    One of Their Attorneys

Christopher A. Nichols
Husch & Eppenberger, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602
Ph: (309) 637-4900
Fax: (309) 637-4928

Susan Somers Neal
Kevin J. McDevitt
Neal & McDevitt®
1603 Orrington Avenue, Suite 2000
Evanston, Illinois 60201
Ph: (847) 424-8330
Fax: (847-424-8320

2



[Proposed]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LOGAN GRAPHIC PRODUCTS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 02 C 1823** |
| | ) | |
| v. | ) | |
| | ) | **Judge Plunkett** |
| **TEXTUS USA, INC.** (*d/b/a* Textus Industries, | ) | |
| Inc. *and* Textus Art & Craft) and | ) | |
| **DAVID SMITH,** | ) | **Magistrate Judge Mason** |
| | ) | |
| Defendants. | ) | |

### ORDER

THIS CAUSE HAVING come before the Court on Plaintiff Logan Graphic Products Inc.'s

("Logan") Motion for Preliminary Injunction, the Court having considered the testimony of the

witnesses, the exhibits introduced into evidence, the arguments of counsel, the written submissions

of the parties, and the caselaw cited therein,

**IT IS HEREBY ORDERED THAT** Logan's Motion for Preliminary Injunction is granted

and that Defendants Textus USA, Inc. and David Smith (collectively, "Textus"), or any agent,

employee, or attorney of Textus, or any person acting in concert with or participating with Textus

are hereby enjoined from:

1.      manufacturing, distributing, marketing, selling, offering for sale, holding for sale,

advertising or promoting any goods or services which incorporate elements of Logan's trade dress,

including, but not limited to:

a.      the color, size, and material (vinyl laminate) of the mat-cutting board;

[Proposed]

      b.    the silver and black color scheme and shape of both the straight-edge and bevel-edge cutting tools;

      c.    the shape of the straight-edge cutting tool, including the use of a "bike handle" grip design;

      d.    the shape and design of the bevel-edge cutting tool;

      e.    the color, shape, and style of the rail and hinges on the straight edge bars, including the placement of like-colored adhesive labels;

      f.    the color, font, and style of the measurements scales;

      g.    the color, sticker location, and screw size and color of the adjustable mat rail guide; and

      h.    the use of a tension spring mat guide on a tool designed to compete with Logan's "#301 Compact" mat cutting board, and the use of a hinge on a tool designed to compete with Logan's "#401 Intermediate" mat cutting board;

2.    doing any other act or thing that is likely to induce the belief that Textus' goods, services, or activities are in some way connected with Logan's business, or that is likely to diminish the distinctiveness of Logan's trade dress.

3.    Logan is not required to post an injunction bond at this time.

Enter:

_____
                    Judge

Kristin J. Achterhof
Floyd A. Mandell
H. David Roseth
Katten Muchin Zavis Rosenman
Attorneys for Plaintiff
525 West Monroe Street, Suite 1600
Chicago, Illinois  60661-3693
Phone  (312) 902-5200
Fax    (312) 902-1061