# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1823 | **DATE** | 5/2/2003 |
| **CASE TITLE** | Logan Graphic Products, Inc. vs. Textus USA, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: we accept the magistrate judge's Report and Recommendation and grant plaintiff's motion for a preliminary injunction. The parties are ordered to appear before the Court on May 14, 2003 at 11:00a.m. to discuss an appropriate preliminary injunction order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | **MAY 0 5 2003** | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGAN GRAPHIC PRODUCTS, INC. )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEXTUS USA, INC. (d/b/a TEXTUS )<br>INDUSTRIES, INC. and TEXTUS ART )<br>AND CRAFT), and DAVID SMITH )<br>)<br>)<br>Defendants. ) | No. 02 C 1823<br>Paul E. Plunkett, Senior Judge<br><br>DOCKETED<br><br>MAY 0 5 2003 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendants' objections to Magistrate Judge Mason's Report and Recommendation ("R&R") recommending that plaintiff's motion for a preliminary injunction be granted. For the reasons set forth below, we accept the magistrate judge's R&R and grant plaintiff's motion for a preliminary injunction.

**I. Facts[1]**

Plaintiff, Logan Graphic Products, Inc. ("Logan"), is a leader in the mat-cutting products industry. For the past twenty-eight years, it has been manufacturing and selling mat-cutting tools. It is currently the largest manufacturer of mat-cutting equipment in the United States. Logan

---

[1] We adopt the "Background" section of the R&R and provide only a brief summary here.

-1-

manufactures a variety of products, including the #301 Compact (the "Compact") and the #401 Intermediate (the "Intermediate") mat-cutting systems, and straight-edge and bevel-edge cutting tools.

Defendants are Textus USA, Inc. (d/b/a Textus Industries, Inc. and Textus Art and Craft) and David Smith, CEO and owner of Textus USA, Inc. (collectively, "Textus"). Textus is a relative newcomer to the industry. It entered the mat-cutting tool industry about eighteen months ago with two mat-cutting systems, the HomePro and the StudioPro, which are designed to compete with Logan's Compact and Intermediate systems. Textus has displayed and marketed these products at several large art supply conventions in the past year, and does not deny that its products employ some of the same features found in Logan's products.

Logan asserts that Textus's mat-cutting products infringe its trade dress and has sued Textus for trade dress infringement in violation of section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a). Logan seeks to establish trade dress rights in the overall "look" of its Compact and Intermediate products, including: 1) the color scheme, shape, size and style of its mat-cutting boards and cutting tools; 2) the font, color and style of its measurement scale; 3) the sticker and screw location of the adjustable mat rail guides, as well as its color; and 4) the tension spring mat guide and the hinged mat guide used, respectively, on the Compact and Intermediate mat-cutting systems.

Textus argues that Logan's products are not entitled to trade dress protection because the allegedly unique and non-functional aspects of the products' trade dress are actually fully functional components that were the subjects of two Logan patents. The patents have expired and, according to Textus, Textus is free to incorporate in its own products many of the features used by Logan. Logan, argues Textus, cannot extend its expired patents by now claiming trade dress protection.

Logan has filed a motion for a preliminary injunction against Textus. The magistrate judge held a hearing on Logan's motion on November 12, 2002. He issued his R&R on December 23, 2002, recommending that Logan's motion be granted and the preliminary injunction be issued.

## II. Magistrate Judge's Report and Recommendation

In his R&R, the magistrate judge noted the requirements for issuing a preliminary injunction. First, the Court must find: 1) some likelihood of success on the merits; 2) no adequate remedy at law; and 3) that the plaintiff will suffer irreparable harm if the injunction is not granted. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If these three conditions have been met, then the Court considers: 1) the harm to the defendant if the injunction is granted, weighed against the harm to the plaintiff if the injunction is denied; and 2) the public interest, *i.e.* the consequences to non-parties of granting or denying the injunction. *Id.* at 11-12.

The magistrate judge then undertook an examination of each of the preliminary injunction requirements. In order to demonstrate entitlement to trade dress protection, Logan must show: 1) that its "overall image" is inherently distinctive or has acquired distinctiveness through secondary meaning; and 2) that the similarity of the defendant's trade dress causes a likelihood of confusion on the source or affiliation of the product. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir.) *cert. denied*, 525 U.S. 929 (1998). In addition, Logan must show that what it claims as trade dress is non-functional. *See* 15 U.S.C. § 1125(a)(3); *TrafFix Devices, Inc. v. Marketing Displays Inc.*, 532 U.S. 23, 29 (2001). Logan need only show that it has a "better than negligible" chance of success on the merits of its claim. *See Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

After receiving evidence and conducting a hearing, the magistrate judge made a variety of findings relating to the similarity of Logan's and Textus's products, the coverage of Logan's previous patents, comparisons of competitors' products, the likelihood of confusion regarding Logan's and Textus' products, and the parties' advertising efforts. The magistrate judge did not find that Logan's products were inherently distinctive, but he did find that Logan has a likelihood of success in proving that its mat-cutting systems have acquired a secondary meaning. In addition, the magistrate judge found that Logan had a better than negligible chance of demonstrating a likelihood of confusion about the products among consumers. Finally, the magistrate judge found that Logan met its burden of showing some likelihood of success in proving that the elements it seeks to protect are non-functional.

In his R&R, the magistrate judge then addressed the other factors to be considered when deciding whether to issue a preliminary injunction – inadequate remedy at law, irreparable harm to the plaintiff, the balancing of harms and the public interest. The magistrate judge concluded by recommending that a preliminary injunction be issued.

### III. Discussion

*A. The Legal Standard*

Textus submits that the R&R should be substantially rejected, and although it has provided many examples of what it considers errors on the part of the magistrate judge, its principal objection to the R&R is that the magistrate judge did not correctly apply the decision of *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), a decision that Textus feels squarely addresses the issues in this case. Many of the magistrate judge's errors, according to Textus, stem from this initial misstep.

-4-

We review, *de novo*, any portion of the magistrate judge's R&R to which specific written objection has been made. *Fed. R. Civ. P.* 72(b). We can "accept, reject or modify the recommended decision . . . ." *Id.* Because Textus asserts that the magistrate judge's errors stem from a misapplication of the *TrafFix* decision and whether the features at issue are functional, we will address that issue first, and move on to the other factors we consider to determine whether Logan's motion should be granted.

## B. *The TrafFix Decision and Functionality*

The *TrafFix* decision involved a claim of trade dress infringement where the plaintiff, MDI, was claiming trade dress protection for a mechanism that had been the subject of an expired utility patent. 532 U.S. at 29-30. The mechanism was a dual-spring apparatus placed at the base of road and other outdoor signs to keep them from falling over in heavy winds. After the expiration of the patents, the defendant reverse-engineered MDI's product and produced signs with a spring mechanism that looked like MDI's. *Id.* at 25-26. MDI sued the defendant for, among other things, trade dress infringement. The Supreme Court held that where an expired utility patent claimed the exact features that were sought to be protected as trade dress, the plaintiff "must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30.

Textus claims that two prior patents held by Logan, U.S. patent numbers 3,996,827 (the "'827") and 4,158,977 (the "'977"), include almost all of the features used in the Compact and Intermediate mat-cutting systems. Thus, argues Textus, the *TrafFix* decision is squarely on point and Logan has a heavy burden to show that the features of its Compact and Intermediate products are not functional. Logan, according to Textus, did not meet its burden. The magistrate judge found,

however, that the *TrafFix* decision was not directly on point and we agree. Although the evidence of the exact scope of the patents at issue in our case was limited, it did suggest that the patents do not cover the features Logan seeks to protect.

Logan presented evidence that the '827 patent covered features of a mat-cutting system not at issue in this case. (Tr. 135-36.) Textus offered no evidence at the hearing to counter Logan's position. As for the '977 patent, the evidence shows that the patent covers a cutting tool where a blade slips through a slot in order to cut a mat. (Tr. 130-32; Def.'s Ex. B.) Logan could not, under the *TrafFix* decision, argue that its trade dress consists of a blade pivoting on a base through a slot in order to cut a mat, and that consumers associate this pivoting-blade-through-a-slot combination with Logan. But Logan is not trying to protect the cutting mechanism covered by the patent; it is trying to protect the combination of features of its products such as the color scheme, shape and style of its mat-cutting boards and tools – the overall "look" of its products. (Tr. 80-81.)

Because the *TrafFix* decision dealt with trade dress protection sought for the exact mechanism covered by an expired utility patent, and because the features sought to be protected here are not covered by expired patents, the *TrafFix* decision is not controlling. However, that does not mean that Logan is relieved of the burden of showing that the features it seeks to protect are non-functional. *See TrafFix*, 532 U.S. at 32 ("even if there has been no previous utility patent the party asserting trade dress has the burden to establish the nonfunctionality of alleged trade dress features"). The magistrate judge recognized that Logan retained this burden and found that Logan met its burden.

"A trade dress feature is 'functional', and therefore not protectable, if it is 'one which competitors would have to spend money not to copy but to design around . . . . It is something costly to do without . . . , rather than costly to have . . . ." *Computer Care v. Service Sys. Enterprises, Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (internal citations omitted). In cases such as this, however, where

a plaintiff seeks to protect the overall look of its product – the combination and arrangement of the various features – the appropriate inquiry focuses on the overall trade dress and not on the individual features. *Id. See also Vaughan Mfg. Co. v. Brikam Intntl Inc.*, 814 F.2d 346, 350 (7th Cir. 1987) ("[defendant's] argument fails by focusing on the individual elements rather than the overall trade dress"). "Trade dress refers to the total image of a product, including size, shape, color combinations, graphics, packaging and label." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994). Textus errs when it urges us to focus on the individual features of Logan's products, such as the ruler, the hinges or the cutters, rather than the overall "look" of the products.

Contrary to Textus's objections, it is appropriate at this stage to consider the existence of alternative designs in the marketplace when determining whether product features are functional. *Thomas & Betts Corp.*, 138 F.3d at 299 (the existence of alternatives in the marketplace bear on functionality). In its *TrafFix* decision, the Supreme Court stated that if functionality has been established, then one need not inquire about other design possibilities. 532 U.S. at 33. But unlike the case in *TrafFix*, in our case functionality has not been established by the existence of expired patents. When making an initial determination about functionality, as we do here, it is appropriate to consider alternatives in the marketplace. *Value Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (7th Cir. 2002).

The evidence presented regarding other competitors' products shows that although these products all employ the same basic features – a board with metal guide rails, a ruler and cutting tools – they all look different from each other. We find, as the magistrate judge did, that Logan has demonstrated a likelihood of success in proving non-functional trade dress. The features of the Compact and Intermediate products it seeks to protect, particularly the color scheme and shape of the cutting tools, the tools' handles and the rail guide and hinges, are not required for effective competition

in the mat-cutting tool industry and are not "something costly to do without." *Computer Care*, 982 F.2d at 1071. We now consider the other elements necessary to demonstrate protectable trade dress — secondary meaning and likelihood of confusion.

*C. Secondary Meaning*

A plaintiff's trade dress has acquired secondary meaning when "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Thomas & Betts Corp.*, 138 F.2d at 291. Secondary meaning can be established by "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Id.* at 291 (internal citations omitted).

The evidence presented supports a finding that Logan has a more than negligible chance of success of proving that its trade dress has acquired a secondary meaning. Logan offered affidavits of two individuals attesting to the fact that the affiants identify the "look" of Logan's products to Logan itself. (Pl.'s Ex. 4, 5.) Logan's dominant position in the industry is undisputed as is its extensive advertising efforts, which include attending trade shows and offering the products for sale through QVC and direct-mail catalogs. (Tr. 31-34, 45, 47, 49, 163.). Evidence was offered regarding the amount of time Logan's products have been in the marketplace, the sales volume of Logan's products and Textus's efforts to incorporate into its new products certain features used by Logan. (Tr. 129, 143-44, 163.). All of this evidence supports a finding that Logan has a likelihood of success in proving secondary meaning.

*D. Likelihood of Confusion*

To show a likelihood of confusion on the part of consumers, we look at: 1) the similarity of the trade dresses; 2) the area and manner of concurrent use[2]; 3) the degree of care likely to be used by consumers; 4) the strength of Logan's trade dress; 5) actual confusion; and 6) Textus's intent to pass off its products as products of Logan. *Thomas & Betts Corp.*, 138 F.3d at 296. In addition, we must consider what actually happens in the marketplace and not simply look at the products side-by-side. *Id.* None of these factors alone is dispositive. *Id.*

The magistrate judge found that Logan could demonstrate a likelihood of confusion among consumers with regard to the two companies' products. In reviewing the evidence ourselves, we agree with the magistrate judge's findings. The products are nearly identical when viewed side-by-side. Such a comparison is not out of place in our analysis because mat-cutters are often depicted side-by-side in catalogs or presented side-by-side in stores. (Tr. 44-48, 178; Pl.'s Ex. 25.) Although at the time of the hearing Textus had not fully ramped up its sales efforts, Textus had presented its products at a trade show and had offered them for sale through an art supply retailer, the same types of sales and marketing efforts used by Logan. No evidence was offered on the degree of care likely to be used by consumers, but the labeling of the products is similar enough that confusion on the part of the consumer is a distinct possibility. (Pl.'s Exs. 20-23.) We do not find convincing Textus's argument that different packaging can prevent confusion. The display of mat-cutting tools in stores and catalogs outside of their packaging occurs with enough frequency that distinctive packaging alone would not address the problem. (Tr. 46-48, 194; Pl.'s Ex. 25.)

---

[2] Meaning the geographical distribution of the products, whether they are sold in the same type of store and through the same marketing channels, and whether they are sold in the same section of the store. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001).

We also consider the fact that Textus, admitting Logan's position as the industry leader, intended to enter the market with products very similar to Logan's. (Tr. 163.) Textus claims that purchasers would not mistake the products because sales are made mainly to distributors and retailers – people in the industry. But the sophistication of a customer does not mean, as a matter of law, that there can be no likelihood of confusion. *See Computer Care*, 192 F.2d at 1070. Logan need only demonstrate a likelihood of confusion as to the two products; it is not required at this stage to demonstrate *actual* consumer confusion. *Id.* In viewing the above factors in totality, we find that Logan has sustained its burden on this point.

Since Logan has demonstrated a better than negligible chance of proving that its trade dress consists of non-functional elements that have acquired secondary meaning, and that Textus's use of the same trade dress is likely to confuse the public, Logan has a more than negligible chance of success on the merits of its claim. We now consider the other factors that inform a court's decision whether to issue a preliminary injunction.

*E. Inadequate Remedy at Law and Irreparable Harm*

When dealing with trade dress infringement, an inadequate remedy at law and irreparable harm are nearly always presumed. *See Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir. 1982). We agree with the magistrate judge that this presumption is appropriate in this case.

*F. Balance of Harms and Public Interest*

The balance of harms and the public interest favor granting Logan's motion for a preliminary injunction. Textus is a relative newcomer to the industry. Although it has made some efforts to sell

its products, we find that it would not suffer undue hardship by the issuance of the preliminary injunction, particularly since it has been on notice that Logan viewed Textus's manufacture and distribution of its products as infringing Logan's trade dress. (Tr. 26, 166.) We balance any harm to Textus against the potential harm to Logan if Textus's products were sold in their current design and purchased by consumers who thought they were purchasing a Logan product. In addition, the public interest favors the issuance of an injunction. *See Health o meter, Inc. v. Terraillon Corp.*, 873 F. Supp. 1160, 1176 (N.D. Ill. 1995) ("The public's interest is best served by the employment of non-confusing trade dresses on similar products put out by competing companies.").

Textus finds fault with the magistrate judge's apparent failure to take into account other equitable factors in reaching its decision to recommend the issuance of the preliminary injunction. Textus claims that Logan's delay in seeking the preliminary injunction and Logan's alleged product defamation and false claims of valid patents weigh against issuing a preliminary injunction. While we recognize Textus has made these allegations, they were not explored at the hearing nor was additional evidence about them submitted. Textus does not appear to have been "lulled into a false sense of security" by any delay on Logan's part to seek the injunction. *Ty, Inc.*, 237 F.3d at 891. Our decision to issue a preliminary injunction follows the "sliding scale" approach articulated by the Seventh Circuit. *See Abbott Labs.*, 971 F.2d at 12. The balance of factors at this stage in the litigation weighs in favor of granting Logan's motion.

## IV. Conclusion

Because Logan has established each of the requisite elements for obtaining a preliminary injunction, the Court will grant Logan's motion. The parties are ordered to appear before the Court to discuss an appropriate preliminary injunction order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: May 2, 2003